# WHEELING.

## HOLLINGSWORTH & CO. *v.* BROOKS.

### July 13, 1874.

The Supreme Court of Appeals decided, in this cause, that the circuit court had no right to make a decree to rent the land of the defendants, without their consent, for the year 1871—the circuit court not having first determined, by its decree, that there was a lien or liability upon the said land, or the rents and profits thereof, for the payment of some debt or liability.—HELD:

1. As the legitimate effect of said decision, that a similar order, directing the land to be rented for the previous year of 1870, is, for the same reason, erroneous, and when coming in conflict with the rights of said defendants, as subsequently settled by said decision of the Supreme Court of Appeals, must be regarded as of no validity.

2. That it also follows, as a legitimate consequence of said decision, that the circuit court may properly make an order directing the rents, or the notes or bonds taken for the same, for the year 1870, to be paid or delivered to the parties entitled to the rightful possession of said property or land during that year—said order being based upon their petition filed in court.

An appeal, by John Slack, administrator of R. M. Malcom, Charles Hedrick, administrator of L. Wilcox and Benjamin S. Smithers, administrator of William Shrewsbury, from a decree of the circuit court of Kanawha county, rendered on the 9th day of November, 1872.

The complainants below were Hollingsworth & Co., a firm that long since ceased to exist, and several other firms that have likewise ceased to exist and the respondents William C. Brooks and others— whose names it is not necessary to here set forth. Such material facts as are necessary to understand the decision of this Court are stated in the opinion of Paull, Judge.

The Hon. James W. Hoge, judge of said circuit court presided at the hearing below.

*Mollohan & Nash, James M. Laidley* and *James H. Ferguson,* for the appellants.

*Smith & Knight* and *Samuel A Miller,* for appellees.

PAULL, JUDGE:

The defendants, William C. Brooks, William A. Brigham and Stuart Robinson, were, on the 5th day of January, 1855, jointly seized of certain valuable salt property, consisting of real estate situated in the county of Kanawha, on which were located coal banks, wells, furnaces, houses, railroads, and other improvements used in the manufacture of salt; they were also possessed, jointly, of certain personal property, consisting of stock used in connection with the aforesaid real estate, and also of certain negroes. Being thus seized and possessed of the above named property, the three parties above named, did, on the 5th day of January, 1855, enter into an article of agreement, or instrument of writing, under their hands and seals, dated on the day and year last aforesaid, by which, (among other things,) "they agreed to *surrender, and did surrender, the possession of all the above named salt property, both real and personal,* unto the said William C. Brooks, for the term of five years, commencing on the 1st of January, 1855," in order to secure the speedy payment of the debts of "Brooks and Brigham;" the said agreement reciting that the same were incurred by them for improvements made upon said property, and for costs of running the same; and that said debts were created by them under the firm name of W. C. Brooks & Co.; that said possession was to continue for five years, unless said debts were sooner paid off, and the parties should desire that said arrangement should cease. In consideration whereof, the said William C. Brooks did agree and bind himself to take charge of said property, and to diligently work the same, in the manufacture of salt, and in such other ways, for which it may be deemed suitable, at his own proper costs and charges, and in his own name; and out of the net proceeds to first pay and satisfy to Mrs. Brigham, an annuity of $1.500; and

next to pay to said Robinson the sum of $1,000, and the residue to the discharge and satisfaction of the debts aforesaid, of Brooks and Brigham; if said debts were not paid, then the said Robinson agreed that all his interest in the property aforesaid, both real and personal, should be liable to the payment thereof, as fully as the property of the other parties therein shall be liable, but that said Robinson, himself, was not to be in any way responsible for the same, he only agreeing to bind the property aforesaid for the payment of said debts, and to charge his interest in the property aforesaid, with the debts of Brooks and Brigham, to the same extent in all respects, that Brooks and Brigham's property is liable, by law, and by the terms of said agreement. The said agreement further provided, that the said William A. Brigham should continue personally liable for the said debts of Brooks and Brigham, however changed they might be, or renewed, and be in the name of said Brooks, alone, and all his property bound therefor, and so to continue, until all said debts were paid, no matter how changed. And the said Brooks and Brigham, did, by said agreement, "charge all their property" aforesaid, with the debts aforesaid, as then existing, and in all their changes, until the same were actually extinguished, in their then, or future, form. These are the chief, and the only, provisions in said agreement that it is now necessary to notice. This agreement was admitted to record on the 6th day of January, 1855, in the clerk's office of the county court of Kanawha county.

To this agreement at the time it was made, there could be no proper or legal objection, or complaint. Mrs. Brigham, to whom the annuity of $1500 was to be paid, was the owner, formerly, of a large part of said salt property, and had made a voluntary donation of the same by grant, unto the said William A. Brigham, her son, and to the said Stuart Robinson, and the said William C. Brooks, her two sons in-law, reserving an annuity of

$1500; and the said property was bound for the same in their hands, and its payment must be provided for. · The said Robinson, while not owing any of the debts of said Brigham and Brooks, or being in any way liable for the same, while voluntarily subjecting his interest in said property to the payment of the same, had the right to do so, on such terms as he may have deemed just and reasonable. The creditors of Brooks and Brigham, whose debts were intended to be secured and paid by said agreement, were not bound to accept its provisions, but were at full liberty to renounce the same, and to sue for and recover their debts, by any other means, subjecting the interest of said Brooks and Brigham in said property, or any other, to the payment of the same. Of course creditors of said Brooks and Brigham, or of either of them, whose debts were not then in existence, can not complain of said agreement, or of the exercise or maintenance of any rights or benefits on the part of the defendants, to which they or either of them are legally or equitably entitled.

While the aforesaid property was in this condition, Hollingsworth & Co. and the other parties united with them, as plaintiffs, having subsequently obtained judgments against the said William C. Brooks, filed their bill in the circuit court of Kanawha county, in April, 1858, setting up the fact of said judgments, and the making of said agreement by the defendants aforesaid, and praying that said property, consisting of lands and negroes, so conveyed to said Brooks, be sold for the payment of their debts, and particularly of the debts of the plaintiffs. They do not directly allege, however, that they are creditors of Brooks and Brigham, or that their debts were of the class or number specified in said agreement, or which it was designed to secure.

Answers to said bill were filed by Mrs. Brigham, Robinson and Brooks, the said William A. Brigham having departed this life, and his interest in said property hav-

ing descended to his mother, the said Mrs. Brigham and his two sisters, the wives of said Robinson and Brooks, his heirs at law. It is not material to the present controversy to notice these answers, or the allegations in the bill to which they particularly refer.

A large number of other parties, who subsequent to the making of said agreement became judgment creditors of the said William C. Brooks, filed their petitions to be made plaintiffs with the parties in the original bill, and that they may be permitted to share in the application of any funds or moneys, which may arise from any disposition which may be made of said property by renting or otherwise; but none of them alleging that they were creditors of Brooks and Brigham, or that their debts were of the class or number specified in said agreement, and whose payment it was designed to secure; while the petition of some of said parties represents the suit of Hollingsworth & Co., as "a general creditors' suit." The petition of some of said parties, which was filed at the November term, 1869, also resisted the public renting of said property at that time, alleging, as they believed, that it would be very injurious to the rights of all the creditors of said Brooks to rent said property in the mode above indicated, at that time.

In November, 1859, when the five years limited in said agreement was drawing to a close, the said William C. Brooks surrendered said property therein specified to the control of the court, so that it might be rented out, either until the rents may discharge the debts or all things are prepared for a sale, if any sale be found necessary thereafter.

At the November term of the court, 1859, an order was made, so far as it appears, without opposition from any quarter, directing the sheriff to rent said property for the year 1860; and by consent of the parties, the court subsequently continued, by its officers or agents, to rent the property up to the 1st of January, 1870. The rents and profits realized up to this time were not sufficient,

after paying expenses, and the annual sums first directed to be paid by said agreement to leave any balance applicable to any other person or claims.

In the fall of 1869, it was proposed that said property be rented, at public auction, to the highest bidder, for the year 1870; but this proposal was resisted by the defendants. An order, however, was made by the court, at its November term, 1869, directing the property to be rented by commissioners appointed for that purpose, for one year from the 31st day of December, 1869; this was accordingly done, and the sum of $20,250 was obtained as rent therefor, and notes and other securities were taken for the above amount.

By order of the court, made on the 8th day November, 1870, the said commissioners were again directed to rent said property for one year from the 1st day of January, 1871; but before this order was executed, the defendant Brooks filed his notice for an appeal therefrom; and an appeal was accordingly taken from said order or decree to the Supreme Court of Appeals. At a term of the Supreme Court of Appeals, held in August, 1872, the said order of the circuit court for renting said property, made on the 8th day of November, 1870, was held to be erroneous, and the same was annulled and reversed. Upon this decision being made, the said William C. Brooks and Lavinia, his wife, Stuart Robinson, and Mary E., his wife, Alethia Brigham, and Walter B. Brooks, claiming to be the owners of said property, filed their petition in the circuit court praying that the amount of rents received from said property for the year 1870, and then in the the possession or under the control of the court, or the notes or bonds, or other securities representing the same, be paid or handed over to them, the said petitioners claiming that the renting of said property for said year was without authority of law, and that they were legally entitled to the rents and profits which had accrued from said renting in accordance with the principles settled by the Supreme Court of Appeals. This prayer of the peti-

tioners was granted, and an order was made by the circuit court, on the 9th day of November, 1872, directing that the rents, or bonds taken for the same, for the year 1870, be paid or delivered to the petitioners, and that the annuity due to Mrs. Brigham, for that year, be paid out of the same. And now from this order, so made on the 9th day of November, 1872, by the circuit court, an appeal has been taken to this Court by the personal representatives of three of the deceased plaintiffs in this cause. Whether there is error in said order of the 9th of November, 1872, is now the question presented for our determination. There is no testimony in the record taken by any of the parties.

With this history of the case, or so much thereof, as we have deemed it material to recite, we observe in the *first* place, that there has been no *express* adjudication by the circuit court, of the rights of the parties, either plaintiffs or defendants, under said agreement so made by Robinson, Brooks and Brigham, on the 5th day of January, 1855 ; nor has there been any express judicial construction of the same, notwithstanding the incidental use of such terms as "trust property," "trust debts," &c., in the pleadings of the parties, and in the orders and decrees of the court, when the use of such terms was obviously not designed to settle, in any way, the true meaning of said agreement. Neither has there been any express adjudication by said court, of the nature and extent of relief to which the plaintiffs and petitioning creditors in this cause are entitled, as against the property specified in said agreement. It may, however, be fairly implied from the order of said court, directing the renting of the property for the year 1870, against the consent of the defendants, that the court did regard these plaintiffs and petitioning creditors as being interested in the rents and profits thereof at that time.

We observe in the *second* place, that the above matters or questions have been in no way settled by the Su-

preme Court of Appeals, except so far as they are fairly embraced within the operation of its late decision, to which reference has been made.

We observe in the *third* place, that said decision is in no way subject to review, in any further decision to be made in this cause, but is permanent and irreversible, settling the rights of the parties upon all questions properly coming within its purview or effect, and all legitimate consequences flowing therefrom.

We now proceed to notice the opinion of the Supreme Court of Appeals and its bearing upon the decision now to be made. The Court say, that "it is of opinion that the circuit court had no right to make a decree to rent the land of the defendants without their consent, not having first determined by its decree, that there was a lien or liability upon the said land, or the rents and profits thereof, for the payment of some debt or liability."

Now liens or liabilities upon real estate, or the rents and profits thereof, may be created either by the acts of the parties, as by their agreements, deeds or other instruments in writing; or they may result from operation of law, as by the judgments or decrees of courts. It is manifest that the Supreme Court of Appeals has not decided, whether the agreement of the defendants, filed as exhibit D., with the plaintiffs' bill, does or does not create a trust, or whether the judgments of the plaintiffs and petitioning creditors, do or do not bind the real estate of the defendants, or its rents or profits; nor to what measure of relief the plaintiffs are entitled, or how it is to be obtained, so far as the estate mentioned in exhibit D. is concerned. Moreover, it has not decided, whether the bill of the plaintiffs is filed by them as creditors at large, seeking the enforcement of specific judgments obtained by them respectively, or is filed by them to enforce the execution of a specific trust, created by the act of the defendants by virtue of said agreement D. These are questions which the opinion of the Court

has not touched or decided; it has merely said that the circuit court has not declared, or determined by its decree, that there was a lien or liability upon the said land, or the rents and profits thereof, for the payment of some debt or liability, no matter how said debt or liability was created or originated, if existing at all; and in the absence of any such decree, that the circuit court had no right to make a decree to rent the land of the defendants, without their consent.

Upon any of the questions above stated, and remaining undecided, it is not now the province or duty of this Court to intimate any opinion.

On the other hand, the Supreme Court of Appeals has decided but one single question, to-wit: that until the circuit court has first ascertained or determined by its decree, that there is a lien or liability upon the land of the defendants, or upon its rents and profits, for the payment of some debt or liability, the court had no right to rent their land without their consent; and hence the order to that effect made on the 8th day of November, 1870, was reversed and annulled. It necessarily follows, as an inevitable consequence, that the order of the court, directing the property or land of the defendants to be rented without their consent, for the year 1870, and which order was made on the 20th day of November, 1869, was also erroneous—the circuit court at that time not having determined that there was any lien or liability upon the land of said defendants, or upon its rents or profits. Said order illegally and wrongfully, in the judgment of the Supreme Court of Appeals, deprived the defendants of the possession of their property for that year; and consequently of its use, or its rents and profits, to which said defendants were lawfully entitled, until said court had determined by its decree that there was a proper lien existing upon said land, or its rents and profits, for the payment of some debt or liability.

The decree of the circuit court made on the 9th day of November, 1872, simply restored to the petitioners

therein named, and who were entitled to the possession of the property during the year 1870, the rents and profits of which they had been illegally deprived, by the previous order of the court, and to which they were consequently entitled.

It has been said that the order renting the property for the year 1870, was never appealed from, and was never set aside, either by the Supreme Court of Appeals or by the circuit court, and is therefore in full force. It may be safe to say, however, that all orders in said cause, determined by the effect of that decision of the Supreme Court of Appeals to be erroneous, are virtually reversed and annulled, when coming in conflict with the rights of any of the parties, as thereby ascertained. The decree restoring the rents made in November, 1872, was founded upon the petition of the parties therein named, filed in open court, and in this case, to-wit: the case of Hollingsworth & Co., and others v. William C. Brooks and others, and where the parties were all present either by person or counsel; no new process or summons directed to them would seem to have been necessary. But even if there was irregularity in the order at the time, or under the circumstances in which it was made, still the order does not prejudice the rights or interests of the appellants, they having no interest in the subject matter thereof, it having been previously ascertained by the highest authority, that the rents and profits belonged to the petitioners. In order to sustain an appeal, the party must show that he has sustained a wrong, or been aggrieved by the judgment or decree of the court, from which the appeal has been taken.

Under these views of the case, the decree of the circuit court, made on the 9th day of November, 1872, is affirmed with costs, and damages according to law, and this cause is remanded to the circuit court of Kanawha county, to be proceeded in according to the principles governing courts of equity.

The other Judges concurred.

DECREE AFFIRMED.