16 108
e56 488
57 36
57 452

16 108
58 172

16 108
59 290

16 108
66 133
66 249
f66 373
66 429

# Wheeling.

## BURLEW, TRUSTEE v. QUARRIER, et al.

### Decided April 10, 1880.

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

1. It seems that a trustee in a deed of trust may apply to a court of equity under circumstances to remove impediments to a fair execution of his trust, and to remove a cloud hanging over the title to the property conveyed to him in trust to secure the payment of a debt or debts.

2. Such trustee may under circumstances, in order to remove a cloud upon the title to the realty conveyed to him in trust, file a bill in equity to set aside and have declared void a tax-deed made under the provisions of the 37th chapter of the Code of Virginia of 1849.

3. A decree between co-defendants can only be based upon the pleadings and proofs between the plaintiff and defendant.

4. When a case is made out between co-defendants by evidence arising by the pleadings and proofs between the plaintiff and defendant, a court of equity should render a decree between the co-defendants.

5. It is the practice of courts of equity to allow amendments to bills, when the purposes of justice require it.

6. It seems the rule in equity in regard to amendments is, that they may be allowed, when the bill is defective in its prayer for relief, or in the omission or mistake of some fact or circumstance connected with the substance of the case, but not forming the substance itself; the plaintiff will not be permitted to abandon his whole case made by his bill, and make a new and different case by way of amendment. But this rule has been much trenched upon, especially in the States and in Virginia.

7. All persons materially interested in the subject of the controversy ought to be made parties in equity; and if they are not, the defect may be taken advantage of either by demurrer or by the court at

the hearing. It is not necessary, although more regular, that the want of parties should be made either by plea, answer or demurrer. On the contrary, if it appear on the face of the record that proper parties are wanting, the decree will be reversed, unless the objection was expressly relinquished in the court below.

1880
Special Term.

Burlew, trustee,
v.
Quarrier, et al.

8. It is also the practice in equity to allow amendments of bills by transposing parties from plaintiff to defendant, and *vice versa*, if it is necessary to do complete justice between the parties. But this will not be permitted at the mere caprice of parties.

9. By appearance to the suit or action in any case, for any other purpose than to take advantage of the defective execution or the non-execution of process, a defendant places himself precisely in the situation in which he would be, if process were executed upon him; and he thereby waives all objection to the defective execution or non-execution of process upon him.

10. While a court of equity will generally allow the amendment of a bill by the transposition of a party from the position of defendant to that of plaintiff, when it appears to be necessary to the doing of complete justice between the parties in the cause, still such court will not as a rule direct such amendment by transposition of parties simply for the purpose of enabling the party transposed to remove the cause into another and foreign jurisdiction.

11. When no exception or objection was taken in the court below, so far as the record shows, to an answer in chancery or to the filing thereof, because not verified by affidavit, it is too late to make the objection in the appellate court.

12. When there are specific allegations of material facts in a bill in equity, and the answer does not specifically admit or deny such material allegations, but among other things contains this clause, viz: "They deny all the material allegations contained in the plaintiff's bill, and call for strict proof of the same," while this denial is general and not sufficient to constitute good pleading in chancery proceedings, if excepted to properly in the court below, still in the absence of such exceptions in the court below the appellate court will generally consider said part of the answer as controverting said material allegations of the bill.

13. In the case of *Goshorns* v. *Friend's adm'r et al.*, (not reported) decided by this Court on the 27th day of February, 1872, this Court held, that the tax-deed from Joel S. Quarrier, clerk of the county court of Kanawha county, to Wm. R. Cox, the purchaser at sheriff's sale for taxes, for a tract of three thousand three hundred and seventy-five acres in the county of Kanawha, at the price of $1.04, was a valid deed. To this case Charity Vance was a party. The said decision of this Court, that said tax-deed was a valid deed, is final and binding upon the said Charity Vance, and cannot be re-

1880
Special Term.

Burlew, trustee
v.
Quarrier, et al.

versed or set aside by this Court in the case at bar as to said Charity Vance.    But it appearing that neither the plaintiff nor his *cestuis que trust* were parties to the said cause of *Goshorns* v. *Friend's adm'r et al.*, and that the deed of trust made by said Charity Vance to the plaintiff, in the bills in the cause at bar mentioned, was executed on the 1st day of July, 1868, and duly acknowledged and admitted to record in the recorder's office of Kanawha county, and that in and by said deed of trust the said Charity Vance conveyed one undivided moiety of the said tract of land to the plaintiff, in trust to secure the payment of a debt of $5,000.00 in two years from the date of said trust with interest from the same date, and that said Charity Vance did not become a party to the said cause of *Goshorns* v. *Friend's adm'r et al.* until some time after the making and due recordation of said deed of trust; and it further appearing that the said tax-deed recites and declares, that "agreeable to the various sections and provisions of the 37th chapter of the Code of Virginia, John Slack, sheriff of said county of Kanawha, did on the 15th day of October, 1855, the same being the October county court day for the county of Kanawha, expose to sale at public auction, at the front door of the court-house for said county of Kanawha, a certain tract or parcel of land containing three thousand three hundred and seventy-five acres, lying on Blue creek, in Kanawha county, and hereinafter more particularly described, and returned delinquent in the name of Thomas L. Hutton, for the non-payment of taxes thereon for the year 1850," &c., and it further appearing by the list of real estate sold by the said sheriff in the months of September and October, 1855, verified by his solemn oath, and returned to the county court of the county of Kanawha according to the provisions of the 9th, 10th and 11th sections of chapter 37 of the Code of Virginia of 1849, that the said sheriff sold said tract of land for the non-payment of taxes since the year 1850.   HELD:

The plaintiff in the case at bar, or his *cestuis que trust*, is not bound by the decision of this Court in the said case of *Goshorns* v. *Friend's adm'r et al.*, as to the validity of said tax-deed, though the said Charity Vance is per force of said decision. Held further : Said tax-deed is void and inoperative as to the lien created upon one undivided moiety of the said tract of land by the said deed of trust, so executed to the plaintiff as trustee as aforesaid, to secure the payment of the debt in said deed of trust mentioned, with its legal interest, and as to said deed of trust so far, and only so far, as it may be necessary to sell said undivided moiety of the said tract of land to pay said debt and interest, because of the material variance between the said tax-deed and the said sworn list returned by said sheriff of Kanawha county, in this : that said tax-deed recites and declares that the said tract of land was sold "*for the non-payment of taxes for the year* 1850," while the said list and the oath of said sheriff

thereto appended state, that it was sold *"for the non-payment of taxes thereon since the year* 1850;" and because this said list is materially defective in failing to show the year for which the taxes were due, for the non-payment of which the sheriff sold the land.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Kanawha rendered on the 15th day of June, 1874, in a suit in chancery in said court then pending, wherein Abraham Burlew, trustee, was plaintiff and Joel S. Quarrier and others were defendants, allowed upon the petition of said Burlew and P. W. Morgan, Charity Vance and George W. Hutton.

*Hon. Joseph Smith,* judge of the seventh judicial circuit, rendered the decree appealed from.

HAYMOND, JUDGE, furnishes the following statement of the case :

In May, 1872, the plaintiff filed his bill in the circuit court of Kanawha county against the defendants. In the bill the plaintiff alleges, substantially that on the 1st day of July, 1868, the defendant, Charity Vance, executed to him, to secure A. B. Hutton of Philadelphia the payment of $5,000.00, a deed of conveyance for one undivided moiety of a certain tract of land lying on Blue creek in said county, known as Charity Vance's Blue creek land, containing about three thousand three hundred and seventy-five acres ; that said deed was duly admitted to record in the recorder's office of said county, on the —— day of July, 1868, and that he, plaintiff, has been called upon by the heirs and administrators of said Hutton, who is now dead, to execute the trust, and that in doing so he finds it necessary to bring this suit in order to remove a cloud upon the title to said tract of land ; that at the time of the making of said deed of trust there was a suit pending in said court, in which W. F. and J. H. Goshorn were plaintiffs, and the administrator of Thomas R. Friend, deceased, was defendant, in which suit the plaintiffs were seeking to sell

1880
Special Term

Burlew, trustee
v.
Quarrier et al.

among other lands the said tract of land so conveyed in trust to plaintiff, but at the date of said deed of trust there was no *lis pendens* of said suit of *Goshorns and Friend, deceased,* and that plaintiff had no personal knowledge of the existence of said suit; that the said tract of land was returned delinquent by the sheriff of Kanawha county in 1855 for the non-payment of the taxes due thereon since the year 1850, and was sold by John Slack, sheriff of Kanawha county, on the 15th day of October, 1855, for the non-payment of the taxes due thereon since the year 1850, to William R. Cox for the sum of $1.04; that on the 31st day of December, 1857, A. W. Quarrier, clerk of the county court of Kanawha county, executed to said Cox a deed for said tract of land, an attested copy of which deed, and also attested copies of the return of the land by said sheriff as delinquent, and his return and report made of the sale thereof by him in 1855, are alleged in the bill to be filed as exhibits, and made a part of the bill.

The plaintiff also alleges that the said deed from A. W. Quarrier to Wm. R. Cox is void, and conveys no title to said three thousand three hundred and seventy-five acres of land, for errors which appear on the face of said deed, and from the records of the office of the county court of Kanawha county, from which record the said deed purports to have been executed, among which are the following: 1st. The return made by the sheriff of said county for the sale of said lands is erroneous, in this that the said return is in the words following: "Memorandum of real estate in the county of Kanawha, sold in the months of September and October, 1855, for the non-payment of taxes thereon since the year 1850, pursuant to the act of assembly," &c. That this does not conform to the statute under which the return was made, as the statute requires that the *year*, for which the land is delinquent, *shall be specified.* 2d. Because the certificate of the sheriff attached to the said return does not conform to the statute under which it was made in this, that the

certificate of said sheriff is in the words as follows:  "I, 1880<br>Special Term.
John Slack, sheriff, do swear, &c., that the foregoing list Burlew, trustee<br>v.<br>Quarrier et al
contains a true account of all the real estate within my
county, which has been sold by me during the present
year, &c., for the non-payment of taxes thereon *since the
year* 1850," while the statute required that the certificate
should specify the year for which the taxes were in ar-
rear; that the land could not be sold for taxes due since
the year 1850, for they had been paid, and the words
"since the year 1850" are not in compliance with the
statute.   3d.  The certificate of the sheriff to the said de-
linquent list reported by said sheriff to the Auditor of
State, in which list the tract of land in question was re-
ported delinquent for the non-payment of taxes due
thereon, is erroneous in this, that the form prescribed by
the statute is, that the sheriff shall make oath that he
has used "due diligence" in collecting the taxes, while
the sheriff has certified instead thereof that he made
"diligent enquiries;" that these expressions are not sy-
nonymous, and that the latter cannot be substituted for the
former without a plain violation of the statute, and with-
out leaving it in the power of the sheriff to violate his
duty.   4th.  The deed from A. W. Quarrier to Wm. R.
Cox does not conform to the records by which the clerk
was authorized to execute a deed, and by which alone
he could have executed a lawful deed, in this, the said
deed recites that the land sold on the 15th day of Octo-
ber, 1855, for the non-payment of taxes thereon "for the
year 1850," while the return made by the sheriff of Ka-
nawha county is that the land was sold on the 15th day
of October, 1855, for the non-payment of taxes thereon,
"since the year 1850;" that the clerk must conform the
recitals in his deed to the records of his office, and must
set forth all the circumstances appearing in the clerk's
office in relation to the sale, and cannot correct the er-
rors of officers in making these records.   Had the clerk
conformed the recitals in his said deed to the records of
his office, he would have stated that the land had been

sold by the sheriff of Kanawha county on the 15th day of October, 1855, for the non-payment of taxes thereon "since the year 1850," which the plaintiff avers would have been untrue in fact. 5th. The deed from A. W. Quarrier, clerk, to Wm. R. Cox is void on its face, for the reason that it does not recite that the land therein described was sold by the sheriff of Kanawha county for the non-payment of taxes "between the hours of ten in the morning and four in the evening," as required by law; also for the reason that the deed does not recite or aver that the land was sold by the sheriff of Kanawha county on the first day of the October court of Kanawha county; nor that the said sale was commenced on the said first day and regularly adjourned to the said 15th day of October, 1855.

For these "and all other apparent errors on the face of said deed, and on the records in the office of the county court of Kanawha county, from which record said deed purports to have been executed," plaintiff alleges he is advised and so avers, that the said deed from A. W. Quarrier to Wm. R. Cox, is void and of no effect. Plaintiff also says and states, "that the return of said land as delinquent to the Auditor of State, the return of the sale of said land on the 15th of October, 1855, and the certificates and proceedings connected therewith, are duly attested and filed in the said suit of *Goshorns and The administrator of Thomas R. Friend*, marked exhibits R. H. F.," which plaintiff asks may be made and considered as a part of his bill.

Plaintiff also avers, that Charity Vance has paid all the taxes on said tract of land since 1848, with the exception of the taxes thereon for a period not exceeding two years, to the year 1870; that during a short period of time since 1848, the title to the said tract of land has been in Thomas L. Hutton, George W. Hutton, and Henry Warren respectively, yet these parties in fact held said tract of land as trustees for Mrs. Charity Vance; that with the single exception of a period of three years,

to-wit, the years 1859, 1860 and 1861, during which time said tract of land was occupied by Davis James, as a tenant of Thomas R. Friend, and the period of the late war up to the 1st of January, 1865, during which period said tract of land was not occupied by any one, said Charity Vance has been in open, notorious and undisputed possession of said tract of land since the year 1848.

Plaintiff also proposes to file with his bill as exhibits receipts for the payment of said taxes, numbered from No. 1 to No. 12 inclusive. Plaintiff also avers that said tract of land was occupied by Thomas R. Friend, or by the heirs of Thomas R. Friend, for the years 1859, 1860 and 1861, under the following circumstances: For several years previous to the year 1859, Davis James had occupied and rented said land from Thomas L. Hutton and Henry Warren, respectively, who held said land as trustees of Charity Vance. In the year 1859, after the said tax-deed had been executed in the absence of Charity Vance, who was living in the state of New York, said Davis James was induced to occupy said tract of land for the aforesaid years against his solemn protestations, as tenant of Thomas R. Friend, by the declarations of Thomas R. Friend, or by some one of his heirs representing him, that if said James refused to acknowledge himself a tenant of said Friend, he would be ejected from said premises; that said Davis James rented said tract of land again from Charity Vance in 1865, and has continued to rent said land from her ever since, and has notoriously and uninterruptedly occupied the same as her tenant. Two written leases for said tract of land to said Davis James are alleged to be filed with the bill as exhibits B and C: "the one from Charity Vance to said James, dated 29th of April, 1870, and the other from her attorney in fact, A. Burlew, dated 18th of March, 1872.

Plaintiff further alleges, that for several years after the execution of said tax-deed, one undivided moiety of the same was registered on the land-book of Kanawha county in the name of Thomas R. Friend, but with the

1880
Special Term.

Burlew, trustee
v.
Quarrier *et al.*

exception of the years aforesaid he has paid no taxes on the same; that since the year 1865, the other moiety of said tract of land has been registered in said land-book in the name of Charity Vance; that for the year 1871 the whole of said tract was registered in said book in the name of Charity Vance, and in no other name; and that the whole of said tract is now registered in the name of said Charity Vance. The plaintiff proposes in his bill to file therewith attested copies of the registry of said land marked exhibit D. Plaintiff also charges that when said tract of land was returned delinquent by said sheriff for the non-payment of taxes thereon, there was ample personal property on said tract of land subject to levy, to pay all taxes due thereon; plaintiff also alleges that by reason of the premises the said tract of land was sold by said sheriff of Kanawha county on the 15th day of October, 1855, and that said deed was executed by said A. W. Quarrier, clerk, to Wm. R. Cox, on the 31st day of December, 1857, in fraud of law. He also avers that on the 31st day of December, 1857, said Wm. R. Cox and wife conveyed by deed to Thomas R. Friend, the one half of said tract of land, and that on the 14th day of March, 1859, the said Wm. R. Cox conveyed by deed to said Thomas R. Friend the remaining one half of said land. And he, plaintiff, proposes to file with his bill as exhibits and as part of the bill copies of said deeds, marked E and F. Plaintiff also charges that the said tax-deed from A. W. Quarrier to Wm. R. Cox is null and void, and conveys no title to said tract of land, and that no title to the same can be set up under it, and that the two deeds from Wm. R. Cox to Thomas R. Friend are null and void, for the reasons above stated. The bill further alleges that "the abstract of the title of Charity Vance to said tract of land is carefully and accurately reported by R. H. Freer, commissioner, in his supplemental report, on file in the said suit of *Goshorns and The administrator of Thomas R. Friend, deceased,*" which report the plaintiff prays may be considered also

1880
Special Term.

Burlew, trustee
v.
Quarrier *et al.*

as a part of his bill. The bill further states that the said W. R. Cox and Thomas R. Friend are dead.

The bill prays, that the said deed from A. W. Quarrier to William R. Cox, dated the 31st of December, 1857, and the said deeds from William R. Cox to Thomas R. Friend be declared null and held for naught; that Joel S. Quarrier and Fannie C. Quarrier, his wife, John H. Thompson and Paulina S. Thompson, his wife, heir-at-law of Thomas R. Friend, deceased, and Eliza A. Cox and her infant children, Ida Cox and Frank Cox, the heirs-at-law of William R. Cox, deceased, Charity Vance and John Dryden, as trustee for Fannie C. Quarrier, be made parties defendant thereto and be required to answer, &c. The plaintiff also prays that such "other and further and general relief" be granted as may be consistent with equity and good conscience. This bill is signed, "Abraham Burlew," and seems to have been verified by the affidavit of plaintiff on the 1st day of May, 1872.

The deed of trust from Charity Vance to Abraham Burlew as trustee, in the bill mentioned, appears to be dated the 1st day of July, 1868, and purports to convey one undivided moiety of a tract of land situate on the waters of Blue creek in Kanawha county, West Virginia, containing three thousand three hundred and seventy-five acres, more or less, to plaintiff, it being the same premises conveyed to Charity Vance by George H. Hutton by his deed bearing date the 27th day of August, 1866, and of record in the recorder's office of Kanawha county in deed-book Z, page 457. In trust nevertheless to secure to Abraham B. Hutton, of the city of Philadelphia and State of Pennsylvania, the payment of the sum of $5,000.00 within two years from date with interest from date, it being for money loaned by said Abraham B. Hutton to said party of the first part. This deed is made subject to section 6, chapter 117 of the Code of West Virginia." This deed of trust appears to

1880
Special Term

Burlew, trustee
v.
Quarrier et al

have been duly admitted to record by the recorder of Kanawha county, on the 2d day of July, 1868.

The deed from A. W. Quarrier to William R. Cox, in the bill mentioned, appears to be dated the 31st day of December, 1857. This deed recites, that "John Slack, sheriff of said county of Kanawha, did on the 15th day of October, 1855, the same being the October county court day for the county of Kanawha, expose for sale at public auction at the front door of the court-house for said county of Kanawha a certain tract or parcel of land containing three thousand three hundred and seventy-five acres, lying on Blue creek, in Kanawha county, and hereinafter described; and returned delinquent in the name of Thomas L. Hutton for the non-payment of taxes thereon for the year, 1850." The deed further recites in substance, that William R. Cox became the purchaser at the sale by the sheriff for the sum of $1.04, which with the amount of the sheriff's commission for selling and the cost of receipts amounts to the sum of $1.34, all of which was paid, as appears by the sheriff's receipt for the same, to the said William R. Cox, &c. This deed appears to have been duly admitted to record in the clerk's office of the county court of Kanawha county, by the clerk thereof, on the 31st day of January, 1858.

The first deed from William R. Cox and wife, to Thomas R. Friend, in the bill mentioned, bears date the 31st day of December, 1857, and purports to convey to said Friend "one equal and undivided moiety of said tract containing three thousand three hundred and seventy-five acres, more or less. This deed appears to have been duly admitted to record in the clerk's office of the county court of Kanawha county, on the 24th day of March, 1858. The second deed from said Cox and wife to said Friend, in the bill mentioned, appears to be dated the 14th day of March, 1859, and purports to convey to said Friend "all their right, title and interest and estate in and to said tract of land of three thousand three hun-

dred and seventy-five acres, more or less." This deed
appears to have been duly admitted to record in the clerk's office of the county court of Kanawha county on the 25th day of March, 1859.

Exhibits B. and C., in the bill mentioned as leases, appear to be dated April 29, 1870, and the 18th of March, 1872, respectively. That of March 18, 1872, on the face thereof appears to be under seal and signed "Charity Vance by A. Burlew, her attorney-in-fact," "Davis James."

It appears that the defendants, Joel S. Quarrier, Fannie C. Quarrier, John H. Thompson, Eliza Cox and John Dryden, trustee, by counsel filed their demurrer in writing to the plaintiff's bill, and on the 9th day of July, 1872, it is stated in the record, the cause came on to be heard on the demurrer of defendants to the complainant's bill, and the court decided and decreed, that "said bill is defective, in that the *cestui que trust* in said bill mentioned is not a party" thereto, and that the plaintiff "does not allege that he has been called upon to execute his trust"; and the demurrer was sustained for these reasons, but was overruled on all other grounds. It also appears by the record, that at the same time and in the same order the court granted the plaintiff leave to amend his bill at bar, which was then accordingly done.

The plaintiff in his amended bill alleges "that Laidley and Mathews, commissioners, on the 10th day of August, 1841, conveyed two thirds of said land to Benjamin Greenbury and Amelia H. Slack, of record in book M, page 188 ; that Laidley and Mathews, commissioners, on the 10th day of August, 1841, conveyed one third of said tract to Garret Deen, of record in book —— page ——; that the said Benjamin, Greenbury and Amelia Slack, on the 27th day of March, 1848, conveyed two-thirds of said tract of land to Charity Vance, of record in book —— page ——; that Garret Deen and wife, on the 23d day of October, 1848, conveyed one third of said tract of land to Charity Vance ; that Charity Vance, on

1880
Special Term.

Burlew, trustee
v.
Quarrier el al.

the 13th day of November, 1848, conveyed the whole of said tract of land to Thomas L. Hutton, of record in book P, page 590; that Thomas L. Hutton, on the 10th day of July, 1852, devised by his last will and testament the one half of said tract of land to Charity Vance, and the other one half of said tract of land to Geo. W. Hutton for Mrs. Vance, which last will and testament and deed, are of record also in Kanawha county; that Charity Vance, on the 31st day of May, 1854, conveyed one half of said tract of land to Henry Warren; that. Geo. W. Hutton, on the 27th day of August, 1866, conveyed one half of said tract of land to Charity Vance; that on the 24th day of March, 1865, Henry Warren conveyed one half of said tract of land to Charity Vance, all of which deeds of conveyance are of record in Kanawha county, attested copies of which will be furnished on the trial of this cause, which plaintiff prays may be read and considered as part of this bill; that on the first day of July, 1868, Charity Vance conveyed to plaintiff as trustee one undivided moiety of said tract of land, to secure A. B. Hutton the payment of $5,000.00, as stated in the original bill; that said land was conveyed to said parties as stated in the original bill."

Plaintiff also says: "that the return of said land as delinquent to the Auditor of State, the return of the sale of said land on the 15th day of October, 1855, and the certificate and proceedings connected therewith, are duly attested and filed in the said suit of Goshorns and the administrator of Friend, deceased, attested copies of which will be furnished on the trial of this cause, which copies he prays may be read in this cause as a part of this amended bill; that an attested copy of the said supplemental report of said commissioner, R. H. Freer, will also be furnished on the trial of this cause, and plaintiff prays that it may be read and considered as a part of this bill." He, plaintiff, further alleges, that A. B. Hutton, the *cestui que trust* in the bill mentioned, has died, and that letters of administration of the estate of said Hut-

1880
Special Term.

Burlew, trustee
v.
Quarrier *et al.*

ton have been cast upon P. W. Morgan, sheriff of Kanawha county; that in addition to the parties in the original bill, plaintiff prays that said P. W. Morgan, administrator as aforesaid, be made a party defendant to this suit, and be required to answer specially, whether any portion of the said $5,000.00, which said trust-deed to plaintiff was given to secure, has been paid; and he avers that no part of it has been paid to plaintiff. Plaintiff then concludes by praying that his original bill may be regarded and treated as amended according to the tenor and effect of this amended bill, and that the defendants be required to answer the same so amended. Immediately following this amended bill there appears in the printed record this writing, viz: "A. Burlew, whose name is signed to the writing above, makes oath and says, that the facts and allegations in the foregoing bill are true as he verily believes. Sworn to before me in the county of Kanawha, this 20th of May, 1874.

"DELAFIELD DUBOIS,
"*Notary Public Kanawha county, West Virginia.*"

It is further stated in the record, that at a term of the circuit court of the said county of Kanawha, held on the 27th day of July, 1872, a demurrer in writing was tendered by the defendants to the plaintiff's amended bill, which was ordered to be filed and set down for argument; and the court having heard the argument of counsel overruled said demurrer. And thereupon on the same day the defendants tendered a plea in writing, to the filing of which the complainant excepted; and the court overruled the exceptions and ordered that the plea be filed; and the plaintiffs took time to reply. And thereupon the defendants, Joel S. Quarrier and Fannie C. Quarrier, his wife, tendered their joint answer to the bill, to the filing of which answer the plaintiff excepted both orally and in writing, which exceptions were overruled by the court, and the answer ordered to be filed; and the plaintiff took time to reply thereto.

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

The demurrer last named is: 1st. For want of proper parties. 2d. For want of equity.

The plea last named is in substance : "that the plaintiff ought not to have and obtain the relief prayed for in his original or amended bills, because the defendants say, that all the matters set up in said bills have already been heard and determined in the suit of *Goshorn et al.* v. *Friend et al.*, heretofore decided in this court and also in the Supreme Court of Appeals of West Virginia, in which suit in the Supreme Court said Charity Vance was a party, the record of which suit, so far as the same went to and was determined by the Court of Appeals, is exhibited with this plea, and prayed, &c.

The exceptions or objections made and filed by the plaintiff to the filing of said plea in the court below, as appears by the record, are as follows in substance: 1st Because the record of the suit of *Goshorn et al* v. *Friend et al.*, is made an exhibit and the plaintiff and his cestui que trust were not parties to said record, and cannot be bound or affected by it. 2d. Because said record is irrelevant and immaterial "to the issues in the cause," and because said record can only tend to produce confusion and to make unnecessarily cumbersome and costly the record. 3d. Because said plea is bad in form in not stating that the complainant in this suit or his cestui que trust was a party to said suit of *Goshorn et al.* v. *Friend et al.*, neither does it state that the decrees of the court in said suit are in force or effect.

The defendants Joel S. Quarrier and Fannie C., his wife, in their answer state and aver as follows : They say they are heirs of the deceased Thomas R. Friend, and claim title to the land in the bill mentioned, subject to the debts and judgment-liens against the said Friend's estate and against said land. They deny the right of the plaintiff to maintain this suit, "he being a mere trustee without any benificial interest in the land in controversy, and a mere depository of the legal title with a power to sell upon certain contingencies": and they "deny all the

material allegations contained in the plaintiff's bill, and call for strict proof of the same. They further say that the plaintiff's suit is brought for the purpose alone of having the judgment of this court, that the deed to Cox in the bill mentioned is invalid and declaring the same null and void." And they further say and aver, "that in a certain suit lately decided by the Supreme Court of this State, wherein W. F. and J. H. Goshorn were plaintiffs and Charity Vance, mentioned in the bill, was a defendant, the said Supreme Court decided that said deed to Cox was a valid deed, so that the whole controversy raised by the plaintiff's bill has been fully and finally decided and determined by the Supreme Court, and that they are advised that the decision of that court cannot now be questioned in the manner attempted by the plaintiff." They "refer to, as an exhibit with their answer, the record and proceedings of said suit in the Supreme Court, and especially the decree in that case rendered by the Supreme Court, which exhibit is marked A and prayed to be taken and considered a part of their answer." This answer does not appear to have been sworn to.

The objections made to the filing of this answer are substantially as follows: 1st. Because neither the plaintiff nor his *cestui que trust* were parties to the suit of *Goshorns and Friend*, and the "record of said suit is therefore impertinent and irrelevant matter." 2d. The exhibits referred to are not responsive to the complainant's bills, and because they are not grounds for affirmative relief. 3d. Because said exhibit can only tend to produce confusion. 4th. Because the decision of the Supreme Court of Appeals cannot be pleaded in this form. 5th. Because the exhibits referred to in the answer do not accompany it.

On the 2d day of November, 1872, it appears, P. W. Morgan, administrator of Abraham B. Hutton, deceased, and also Roger J. Page, guardian *ad litem* for Ida and Frank Cox, infant defendants, appeared and filed three

1880
Special Term.
—————————
Burlew, trustee
v.
Quarrier *et al.*

respective answers to plaintiff's bill, to which the plaintiff replied generally. Said Morgan, administrator, in his answer says, that he is advised that no part of the consideration, which the deed of trust from Charity Vance to the plaintiff, executed on the 1st day of July, 1868, was given to secure, has been satisfied or discharged, and that he called on the plaintiff, trustee, to execute his trust under said deed, and, if necessary, to sell the said tract of land described in said deed of trust to satisfy the lien created thereby.

The answer of the guardian *ad litem* for said infants is in the common form, and prays the court to protect the rights of the said infant defendants in all respects.

On the 8th day of November, 1872, it appears, Charity Vance and George W. Hutton, by their counsel, appeared and filed their answer to plaintiff's bill; and plaintiff replied generally thereto. The answer of Charity Vance and George W. Hutton is in substance, that they say the averments and allegations in the bill are true to the best of their knowledge and belief, and concludes with the prayer that they be hence dismissed. This answer does not appear to have been sworn to and purports to be by counsel.

It appears that this cause on the application of the defendant, Charity Vance, was removed to the District Court of the United States for the District of West Virginia, holden at Charleston, and that afterwards, on the 8th day of May, 1874, the said last named court made and entered this order in the cause, viz: "It appearing to the court that Charity Vance, the plaintiff, on whose application this cause was removed to this Court, is a defendant on the record, it is ordered that this cause be remanded to the circuit court of Kanawha county for further proceedings to be had therein." On the 11th day of May, 1874, it appears, the following order was made in the cause by the circuit court of said county of Kanawha, viz: "The defendants in this cause to-day presented a certified copy of the order of the District

1880
Special Term.
───────
Burlew, trustee
v.
Quarrier *et al.*

Court of the United States for the District of West Virginia, entered in this cause on the 9th day of May, 1874, showing that this cause was remanded to this Court from the said District Court. Whereupon, on motion of the defendant it is ordered, that this cause be docketed." It further appears that on the 18th day of May, 1874, the defendants, John H. Thompson and Paulina S. Thompson, tendered their joint answer to complainant's bill, which answer is in substance as follows: That they are citizens and inhabitants of the State of California; that said Paulina S. Thompson is one of the heirs-at-law of Thomas R. Friend, deceased, and as such, in connection with her sister Fannie C. Quarrier, a citizen and inhabitant of West Virginia, is vested with the legal title to the property in the bill mentioned; and they (said Thompson and wife) adopt the answer of Joel S. Quarrier *et al.*, filed in the cause. This answer does not appear to have been sworn to. It does not sufficiently appear by the record of the proceedings of the court in the cause, that exceptions were taken or objections made before the court to the filing of this answer or to its sufficiency; but it does appear that the plaintiff tendered to the court a special replication to the last named answer, which is in substance as follows: "That neither the said John H. Thompson nor Paulina S. Thompson, his wife, have any interest whatever legal or equitable in the matters in controversy in this cause, and that they are not parties in interest, whose rights could in any manner be affected by a decree rendered in this cause; that neither the said John H. Thompson nor Paulina S. Thompson has ever requested an answer to be filed on their behalf, nor have they given any one authority to so appear for them, and at the conclusion he prays that "the pretended answer filed therein may be regarded as of no account, and that the same may be stricken from the files." This replication is not sworn to.

It appears from the record that on the 19th day of May, 1874, the plaintiff tendered his petition praying

permission to amend his bill, to the filing of which the defendants objected. In this petition the plaintiff prays that he be permitted to amend his bill by transposing the name of Charity Vance from that of defendant to that of plaintiff.

It further appears that by the decree rendered in the cause on the 15th day of June, 1874, the plaintiff tendered a demurrer in writing to the special plea theretofore filed by the defendants, which was ordered to be filed, and by consent of parties the said demurrer was set down for argument, and the same being argued and considered was sustained by the court. And thereupon the plaintiff tendered a special replication in writing to the answer of the defendants, John H. Thompson and Paulina S. Thompson, theretofore filed, to the filing of which special replication the said defendants objected, which objection being argued and considered by the court was sustained by the court. And thereupon the plaintiff replied generally to all the answers of the same defendants theretofore filed in the cause. "And thereupon the defendant, Charity Vance, moved the court to remove this cause to the District Court of the United States for the district of West Virginia, under the act of Congress for the removal of causes from the State to the United States Courts, and filed in support of said motion and petition an affidavit of said Charity Vance and bond with good and sufficient security, which motion was resisted by the other defendants, and being argued and considered by the court was overruled, it appearing to the court that this cause was at a former term ordered to be removed to said United States District Court on the motion of the said Charity Vance, and was remanded back to this court by the said District Court for want of jurisdiction in said District Court." And thereupon the plaintiff moved the court to transpose the defendant, P. W. Morgan, administrator of A. B. Hutton, deceased, from the position of defendant to plaintiff on the record, which motion being argued by counsel and considered

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

by the court was overruled. And thereupon (as recited and stated in the decree) the cause came on to be finally heard on the plaintiff's bill and amended bill, and the exhibits filed therewith, taken for confessed and set for hearing as to the defendants, John Dryden, trustee, and Eliza A. Cox, they having been served with process and still failing to appear and answer, upon the joint and separate answer of the defendants, Joel S. Quarrier and Fannie C. Quarrier, and the exhibits filed therewith, the joint and separate answer of the defendants, Charity Vance and George W. Hutton, the separate answer of the defendant, P. W. Morgan, administrator of A. B. Hutton, deceased, the joint and separate answer of the defendants, John H. Thompson and Paulina S. Thompson, the answer of the infant defendants, Ida Cox and Frank Cox, by their guardian ad litem, R. J. Page, and the general replication of the plaintiff, to each and all of said answers, and the depositions taken and filed in the cause, and was argued by counsel. Upon consideration whereof the court was of opinion that the plaintiff had not shown himself entitled to the relief prayed for. And thereupon the court adjudged, ordered and decreed, that the bill and amended bill of the plaintiff be dismissed, and that the defendants, Joel S. Quarrier, Fannie C. Quarrier, John H. Thompson, Paulina S. Thompson, John Dryden, Eliza A. Cox, Frank Cox and Ida Cox, recover of the plaintiff their costs about their defence in this behalf expended, including $30.00, as allowed by law.

It appears that in the case of *Wm. F. and J. H. Goshorn against Thomas R. Friend, administrator, and others*, hereinbefore mentioned and referred to, a decree was made and entered on the 27th day of March, 1869, viz: "This cause came on to be heard upon the proceedings, heretofore had therein, and the petition of William Finney and others, now filed therein, and was argued by counsel, upon consideration whereof the court doth order Henry Warren and Charity Vance to be

1880
Special Term

Burlew, trustee
v.
Quarrier et al.

made parties defendant to the said petition, and answer the same; that process issue against them for that purpose; that they answer and say what title, if any, they have to the tract of three thousand three hundred acres of land on Blue creek in Kanawha county, granted to Thomas R. Friend and William R. Cox by deed filed in this cause; that they file any papers, if any such they have, tending to show that they made tender to William R. Cox and Thomas R. Friend, or to either of them, of the purchase-money at the tax-sale thereof made by the sheriff of Kanawha county. And this cause is referred to Commissioner Romeo H. Freer to examine and report upon the title of said three thousand three hundred acres preparatory to a sale thereof. And Commissioner Freer is ordered to report any further debts due from the estate of Thomas R. Friend and from Joseph Friend which any creditor may lay before him. And the court doth order Commissioner Freer to give notice of the time and place of taking this account and making his report of the title in some newspaper printed in Charleston, West Virgiuia, for four weeks, which shall be to all parties to this cause sufficient notice of the time and place of taking this account. And the commissioners, Hedrick and Quarrier, are hereby directed to suspend any proceedings under the decree of last term, so far as the tract of three thousand three hundred acres is directed to be sold, but that they do proceed to sell the other lands mentioned in said decree." The petition of William Finney and others, referred to in said last named decree, states that at the last term of Kanawha circuit court, in the last named cause, among other lands belonging to Friend ordered to be sold by a decree then made, is a tract of some three thousand acres on Blue creek in said county; that there is a cloud hanging over the title to this valuable tract of land, which will cause it to be sold greatly under its value, if not removed before the sale by Commissioners Hedrick and Quarrier. And the petitioners ask that the sale be postponed, and

it be referred to one of the commissioners of the court to report upon the title; that Mrs. Charity Vance and Henry Warren and other parties also claim said land as original owners by deeds duly recorded; that the defect and cloud arises as follows: The lands were sold at a tax-sale, and Friend's was the tax-title. It was reported in the county that the money was tendered by the owners before the deed was made, and within two years after the sale. This is not true, but still it will ruin the sale unless proper means are taken to correct this error before sale.

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

It further appears that on the 15th day of November, 1869, an order was made and entered in the last named cause as follows, viz: "Among other things it appearing to the court that Charity Vance and Henry Warren, defendants in this cause, claim title to the tract of three thousand three hundred and seventy-five acres mentioned in said petition, it is further ordered and decreed that Romeo H. Freer, a commissioner of this court, do summon the said Vance and Warren to appear before him and show what title, if any, they or either of them have to the said three thousand three hundred and seventy-five acres, and such other matter as any of the parties to this cause may require or that he may deem pertinent, and that he report his proceedings to the next term of this court. It is ordered that service of such summons upon the attorneys of Charity Vance and Henry Warren shall be equivalent to personal service thereof upon the parties themselves, &c."

It further appears, that on the 7th day of July, 1870, the said circuit court of Kanawha county made and entered this decree in the last named cause, viz: "This cause came on this day to be heard upon the report of master commissioner Romeo H. Freer, made under a decree heretofore rendered in this cause, and upon the exceptions endorsed thereon, and upon the papers heretofore read and proceedings had therein, and was argued by counsel. Upon consideration whereof the court is of

1880
Special Term.
Burlew, trustee
v.
Quarrier et al.

opinion, that the said exceptions are well taken and ought to be sustained. It is therefore adjudged, ordered and decreed, that the said exceptions to said commissioner's report be and are hereby sustained, and that the tax-deed from Alexander W. Quarrier, clerk of the county court of Kanawha county, to William R. Cox, dated December 31, 1857, and filed with said commissioner's report, for three thousand three hundred and seventy-five acres of land claimed by the defendant, Friend, be and the same is hereby null and held for naught. And the court doth decide, that the legal title to said three thousand three hundred and seventy-five acres of land is in the defendant, Charity Vance."

Commissioner Freer in his report mentioned in the last named decree says, as appears from as much of the record in the last named cause as is before us, that he makes the same in pursuance to the said decree of the 15th day of November, 1869, and that he gave notice of the time and place of executing the order by serving a written notice on the parties in interest, in the manner directed by said decree. And that while he was engaged in making his report, all the parties interested were before him either in person or by attorney; that all were fully notified of the time and place of stating the same, and also of its completion. In his said report the commissioner gives what he calls an abstract of the title to said tract of three thousand three hundred and seventy-five acres of land, as ascertained from the records of the recorder's office of Kanawha county, begining at the sale made by commissioners Laidley and Mathews in the year, 1841, and ending with the deed made from A. Quarrier, clerk, to William R. Cox, the said abstract of title as reported by said commissioner is as follows, viz: Thomas S. A. Mathews and James M. Laidley, commissioners, to Benjamin, Greenberry and Amelia H. Slack, deed dated August 10, 1841, and conveys three thousand three hundred and seventy-five acres on Blue creek from Benjamin Slack and wife to Charity Vance; deed dated March 27, 1848,

and conveys two thirds of three thousand three hundred and seventy-five acres conveyed by Mathews and Laidley, commissioners; John Slack, Jr., to Garrett Dunn; deed dated August 6, 1845, and conveys one third interest in land conveyed by commissioners Mathews and Laidley. Garrett Dunn and wife to Charity Vance, deed dated October 23, 1848, and conveys one-third interest in the three thousand three hundred and seventy-five acres described in deed of Laidley and Mathews. Charity Vance to Thomas L. Hutton, deed dated November 13, 1848, and conveys three thousand three hundred and seventy-five acres on Blue creek, conveyed by commissioners Laidley and Mathews. A. W. Quarrier, clerk, to William R. Cox. The above mentioned three thousand three hundred and seventy-five acres forfeited in the name of Thomas L. Hutton and sold in 1855, by the sheriff for the non-payment of taxes thereon *since the year*, 1850, deed from Quarrier, clerk, to Cox, dated 31st December, 1857, William R. Cox and wife to Thomas R. Friend, two deeds conveying the three thousand three hundred and seventy-five acres more or less, one dated the 31st of December, 1857, and the other 14th of March, 1859. The said commissioner also says that the above is an abstract of the title to said three thousand three hundred and seventy-five acres (the land in controversy) so far as necessary for the purposes of this suit.

The said commissioner in his said report reports, "that after fully investigating the matter he is of opinion, that the legal title in fee simple is now vested in those holding or claiming under the defendant, Thomas R. Friend, now deceased." This report is dated March —, 1870. It further appears that the exceptions endorsed on said report of said commissioner and referred to in said last named decree were made by the administrator of Henry Warren and of Mrs. Charity Vance by their counsel, which counsel were "J. S. Swann for H. A. Warren, administrator, &c.," and "A. Burlew for Mrs. C. Vance."

1880
Special Term.

Burlew, trustee
v.
Quarrier *et al.*

1880
Special Term.

Burlew, trustee
v
Quarrier *et al.*

The said exceptions are for several causes assigned therein and are as follows, to-wit: "The counsel of Henry Warren and of Mrs. Charity Vance except to this report : 1st. Because there was more than a sufficiency of personal estate on the land in question to pay the taxes owed by the tenant, James, in 1851, and for each year to 1860.    2d. Because each and every proceeding of the sheriff, his memoranda and certificates are wholly different from those required by the acts of the Legislature; among other things a list of delinquent lands in the county of Kanawha for the year 1850 is not the memorandum required, the returns are not rightly filed, the certificate of the sheriff is not as the law requires by Code of 1849, page 19.    3d. The memorandum, which begins : 'The following is a list of all the lands,' &c., and concluding according to law, is not the memorandum required by the Code, page 201, and the certificate to the same of the 17th of December, 1855, does not confine itself to the act of the Legislature.    4th. The certificate, which begins : 'Memorandum of real estate in the county of Kanawha,' &c., certified by Mr. Cunningham, recorder, is not as the law requires, and the certificate thereto is equally defective in this, among other things : 'Since the year 1850' being used in each, whereas the law requires that the real year should be specified in both and each.    For these and other reasons appearing in the exhibits, we maintain that the sheriff has not complied with the law, and that this sale conferred no title upon the purchaser, Cox, or on any one. For these and other reasons we believe that the court should cancel this deed, and should further decree that the sale of 1860 be set aside, because first, there was no deed, and second, we have a legal tender and refusal. See exhibit 'X' and Burnes's evidence.    And we except to the whole report, because contrary to the whole evidence.    We further except to this deed as evidence—that is to say, the deed from A. W. Quarrier to William R. Cox for the land in question, dated 31st

1880
Special Term.

Burlew, trustee,
v.
Quarrier et al.

December, 1857, because the requirements of the law pertaining thereto have not been complied with, so as to make it evidence. We further except to the report and return and certificate of sale by John Slack set out in said deed for same reasons."

In a supplemental report of said commissioner, Freer, appearing in the record of the last named cause, which is dated March, 1870, and which appears to have been filed in court on the 2d of April, 1870, the said commissioner says: "At the request of defendants, Warren and Vance, in the above suit I make the following supplemental report, showing the title of Mrs. Charity Vance to the three thousand three hundred and seventy-five acres of land mentioned and described in my former report, beginning with the sale and conveyance of Laidley and Mathews, commissioners, to Benjamin and Greenberry Slack. (1.) Laidley and Mathews, commissioners, to Benjamin, Greenbury and Amelia H. Slack, deed dated August 10, 1841, conveys two thirds of said three thousand three hundred and seventy-five acres, recorded in book M, page 188. (2.) Laidley and Mathews, commissioners, to Garret Dunn, deed dated August 10, 1841, conveys one third interest in said land, recorded in book —, page —. (3.) Benjamin, Greenbury and Amelia Slack to Charity Vance, deed dated March 27, 1848, recorded in book P, page 552, conveys the two thirds interest aforesaid to Charity Vance. Garret Dunn and wife to Charity Vance, deed dated October 23, 1848, recorded in book P, page 589, conveys one third interest aforesaid with special warranty. (5.) Charity Vance to Thomas L. Hutton, deed dated November 13, 1848, recorded 13th of December, 1848, in book P, page 590, conveys the whole tract of three thousand three hundred and seventy-five acres. (6.) Thomas L. Hutton to Charity Vance and George W. Hutton devised by his last will and testament, dated July 10, 1852, admitted to record on the 30th day of October, 1854, one undivided half of said tract of three thousand

1880
Special Term.

Burlew, trustee
v.
Quarrier *et al.*

three hundred and seventy-five acres to her in her own right, and one undivided half to said George W. Hutton, recorded, book. —, page —. (7.) Charity Vance to Henry Warren, deed dated the 31st of May, 1854, recorded in book S, page 429, conveys the one half of said tract devised to Mrs. Vance by said Thomas L. Hutton. (8.) A. W. Quarrier, clerk, to William R. Cox, deed dated the 31st of December, 1857, conveys the whole three thousand three hundred and seventy-five acres to William R. Cox, the purchaser at a tax-sale had in 1855, and sold for the taxes since the year 1850; tax due $1.04; recorded in book V, page 339, a copy of which deed is filed with my original report. (9.) George W. Hutton to Charity Vance, deed dated the 27th of August, 1866, recorded in book Z, page 457, conveys with special warranty the one half of said tract devised to said Geo. W. Hutton by Thomas L. Hutton on the 10th of July, 1852. (10.) Henry Warren to Charity Vance, deed dated the 14th of March, 1865, recorded in book Y, page 339, conveys the one half of said tract conveyed by said Charity Vance to said Henry Warren on the 31st day of May, 1854, as aforesaid.

"It will be seen by reference to the foregoing abstract that, if said tract of three thousand three hundred and seventy-five acres was sold by the sheriff in 1855, for taxes due thereon subsequent to the year, 1852, it was at that time the property of Mrs. Vance and George W. Hutton, and ought not to have been sold as an entirety, if it could have been sold at all. The sheriff's memorandum says, that it was for taxes due thereon *since the year*, 1850. The foregoing abstract is all evidenced by the records in the recorder's office."

This supplemental report is signed by said commissioner Freer, and a copy of it is filed as an exhibit in the case at bar.

It further appears, that on the 28th day of February, 1871, the said W. F. and J. H. Goshorn, in vacation filed their undertaking with security thereto and their

1880
Special Term.
Burlew, trustee
v.
Quarrier et al.

notice in writing to said Charity Vance of the filing of said undertaking in the clerk's office of said circuit court according to the provisions of the 2d, and 4th sections of chapter 135 of the Code of 1868, and appealed from said decrees of the 27th day of March, 1869, and the 7th day of July, 1870, rendered in said last named cause, to this court. The service of said last named notice appears to have been accepted by "Charity Vance, by A. Burlew, her attorney." It further appears that on the hearing of said last named cause on said appeal by this court on the 27th day of January, 1872, the appellants appeared by their counsel, Hedrick & Hogeman, and the appellees by their counsel, John Swann and A. Burlew, and that said appeal was decided by this court on the 27th day of February, 1872, at which time this court by its decree reversed said decrees of the 27th day of March, 1869, and the 7th day of July, 1870, and remanded the cause to the said circuit court of Kanawha county for further proceedings to be had therein according to the principles laid down in the written opinion of the Court, and decreed that the appellee, Charity Vance, should pay to the appellants their costs about the prosecution of their appeal expended, but did not reverse the said decree of the 15th of November, 1869, or dismiss said petition.

This case was never reported for some cause unknown to this court or any member of it now composing the same ; but it appears by the record of the case at bar that the written opinion of the Supreme Court of Appeals, given in the last named cause and referred to in the last named decree and order of the said Supreme Court of Appeals, is as follows, namely : "The deed from A. W. Quarrier, as clerk of the county court of Kanawha county, to William R. Cox was made pursuant to section 16, chapter 37, page 203 of Code of 1849, and shows upon its face strict compliance with the requisitions of said section, and is *prima facie* evidence of such title, as according to the 22d section of said chap-

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

ter it purported to vest in the purchaser at such sale, liable to be questioned for any irregularity appearing on the face of the proceedings. (*Flanagan* v. *Guinet et al.*, 10 Gratt. 421; *Hobbs* v. *Shumate*, 11 Gratt. 516.) The *onus probandi* is cast upon the contesting party to show by the face of the proceedings such irregularity as affected the validity of the deed. (*Idem*). The objections made to the certificates and the affidavits of the sheriff are to matters of form merely, and are not such irregularities as would vitiate the sale and impeach the deed, because, though defective in form, they nevertheless comply substantially with the statute. The expression used by the sheriff in his certificate and affidavit, viz: 'Levied since the year 1850,' is clearly a misrecital, as is fully shown by the face of the proceedings, as for instance, in the said affidavit he states: "for the non-payment of taxes thereon *since the year* 1850, as per list certified to me by the Auditor," &c. By reference to the Auditor's list it appears that the land is delinquent in the name of Thomas L. Hutton; number of acres three thousand three hundred and seventy-five; location, Blue creek; year, 1850; tax eighty-four cents, total tax and damages $1.04, which corresponds exactly with the memorandum, and receipt of the sheriff to the purchaser, Wm. R. Cox; and in which the sheriff states positively and distinctly 'for the non-payment of taxes thereon for the year 1850,' and also corresponds precisely with the list of land in the commissioner's land-book for the year 1850, filed in the clerk's office of Kanawha county. It seems to me that it plainly appears upon the face of the proceedings, that the land in question was sold for taxes due thereon from Thomas L. Hutton for the year 1850; and that all the prerequisites of the law had been substantially complied with, and that the difference in the wording of the forms used in the certificates and affidavits from those of the statute, do not show irregularity of the proceedings, but merely informality in the statement of proceedings, which were in all respects regular. But suppose the proceedings

were irregular. Was not the deed at least color of title, and in connection with other evidence, proper evidence to shew an entry under a claim of title and a continued holding thereunder, as appear to be the facts in this case, so as to make out a title or rights of entry by actual possession? (*Flanagan* v. *Grimmet*, 10 Gratt. 421.) There does not appear from the record in this case, any reason sufficient to justify the circuit court in setting aside and annulling the said deed; and there was error in doing so, therefore the decree complained of should be reversed with costs, and the case remanded."

The plaintiff filed the depositions of several witnesses in the cause at bar, proving substantially the allegations of the bill in relation to the possession of said tract of three thousand three hundred and seventy-five acres of land.

From and to the decree rendered in the cause at bar on the 15th day of June, 1874, the appellant, Abraham Burlew, upon his petition and assignment of errors therein, obtained an appeal and *supersedeas*; and the cause upon said appeal and *supersedeas* having heretofore been heard and argued by counsel before this Court, it is now to be determined.

*Thomas L. Brown*, for appellants.

Where a former decree is relied on as proof of the final adjudication of all the rights of the parties in controversy to the subject-matter, Story in his Equity Pleadings, section 791, says: "So much of the former bill and answer must be set forth as is necessary to show *that the same point was then in issue.*

Where a former decree is relied on as an estoppel, or as conclusive, it must be; 1, about the same subject-matter; 2, between the same parties; and, 3, *for the same purpose.* See 4 Howard, 498; 24 Howard, 579; 3 Wendell, 28; 1 Starkie on Evidence, 270.

"A judgment or decree is final only for *its proper purpose and object.*"

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

Facts litigated in one suit *for one purpose* may be re-litigated in another suit, between the same parties, *for a different purpose.*

See authorities cited in Story's Eq. Pl., in note to section 791.

Greenleaf on Evidence, section 528, vol. 1, says: "The principle, upon which judgments are held conclusive upon the parties, requires that the rule should apply only to that which was *directly in issue*, and not to everything which was incidentally brought into controversy during the trial." Starkie on Evidence, vol. 1, section 265, says: "The judgment, decree, or sentence, must be *direct upon the precise point*, and it is not evidence of any matter which came *collaterally* in question, nor of any matter *incidentally* cognizable, nor of any matter to be inferred by argument from the judgment, as having constituted one of the grounds of that judgment." In *Smith* v. *Sherwood*, 4 Conn., 276, the court held: "It is, however, necessary, in order to constitute an estoppel by a former judgment that *the precise point* which is to create the estoppel should have been put in issue and decided, and this must appear from the record alone." See note on page 264 of Starkie for reference to this decision. See also 3 Wendell, 28. As to what constitutes a *res adjudicata* and what does not, is discussed in 24 Howard, pages 578 and 579. When a former suit is pleaded, *res adjudicata* must be shown upon *lis mota*; 4 Johnson's Chy. R. 141; 2 Robinson's Old Practice, 407; 24 Howard, 523. This suit is *diverso intuitu*, 1 Johns. Chy. 91–96; 1 Atk. 571; 3 Wendell, 27. Points incidentally considered, or which came up collaterally, not concluded by the decree, 6 Wheaton, 109; 7 Peters, 206.

*A Burlew*, for appellants, cited the following authorities:

4 Rand. 93; Story Eq. Juris. §§ 615, 619, 620, 621; 21 Gratt. 269; 21 How. 591; Adams Eq. 230; Code 1849,

ch. 37, § 16; 1 Story Eq. Juris., §§ 397, 399; *French* v. <sub>Special Term.</sub> *Edwards*, reported January 15, 1879, No. 3; 2 Black. Burlew, trustee 444–5; 1 Story Eq. § 700; 1 Johns. Chy. 522; Lube Quarrier *et al.* Eq. Pl. 86 and note; Story Eq. Pl. §§ 237, 541, 887, 891, 893; Cooper Eq. Pl. 333; 3 Gratt. 13; 2 Rob. Pr. 276; 9 Gratt. 275; 10 W. Va. 78; 3 App. Cas. 32; 1 Dan. Chy. Pr. 295, 405, 417, 418; Code ch. 125 § 12.

*C. Hedrick, Laidley & Hogeman,* and *Mollohan & Nash,* for appellees, relied on the following authorities:

20 How. 467; 7 Gratt. 81; 20 Gratt. 31; 15 Vt. 46; 9 Gratt. 326; 9 Leigh 131; 17 Wend, 483; 18 Pick. 393; 3 W. Va. 386; 13 Ohio St. 563; 18 How. 85; 4 Pet. 85; 1 Stark. Ev. 287; 1 Greenl. Ev. §§ 522, 551; 1 Munf. 373; 2 Munf. 167; 2 Gratt. 250; 13 Gratt. 1; *Id.* 152; 22 Gratt. 484; 12 Am. Rep. 545 et. seq.

HAYMOND, JUDGE, delivered the opinion of the Court:

The appellant has assigned in his said petition the following as errors in the said decree, to-wit: .

"1st. That said court refused to allow the petition of A. Burlew, trustee, and the petition of Charity Vance to be filed in the cause, by which petitions the court was invoked to allow the complainant to amend his bill by transposing the name of Charity Vance from that of defendant to that of complainant on the record, and refused to allow said bill to be amended. 2d. That the court refused to allow the complainant to amend his bill by transposing the name of P. W. Morgan, administrator, from that of defendant to that of plaintiff on the record. 3d. That the court overruled the motion of the plaintiff to remove said cause to the circuit court of the United States, to be held in the district where said suit was pending. 4th. That the court erred in hearing said cause upon its merits and in dismissing the complainant's bills, for by operation of law said cause had been removed from said court to the said circuit court of the United States. 5th. That the court

1880
Special Term.

Burlew, trustee
v.
Quarrier *et al.*

did not pass upon or dispose of the exceptions of the complainant to the filing of the joint answer of Joel and Fanny C. Quarrier. 6th. That it was error to file the answers of the defendants, Joel S. and Fanny C. Quarrier and John H. and Paulina S. Thompson, in their present form, as well as for not being verified according to law. 7th. That it was error to dismiss the complainant's bills. 8th. That the court committed other errors in its decrees and proceedings in said cause, apparent on the face of the record."

For the sake of brevity I will consider the first and second errors assigned by the appellant together, as well also as the error assigned by the appellant in his brief, to-wit: That the court refused to transpose the names of the defendants, Charity Vance and P. W. Morgan, administrator of A. B. Hutton, from the position of defendants to that of plaintiffs on the record, as requested by the plaintiff, in order that the cause might be removed to the district court of the United States for the district of West Virginia, at Charleston.

In the first place it must be observed, that it does not appear by the record of the proceedings of the court, that Charity Vance asked, petitioned or prayed the court in any form that her name be transposed from that of a defendant to a plaintiff in the cause. It appears by the record of the proceedings of the court, that the plaintiff tendered his petition for the purpose of amending his bill, to the filing of which the defendants objected. By reference to the petition of plaintiff it appears, that by it he prayed for permission to amend his bill by transposing the name of Charity Vance from that of defendant to that of plaintiff on the record. The record, however, as entered by the court, shows that the defendants, of whom Charity Vance was one, objected to said petition. Regarding the record as a verity, it must therefore be taken and considered by us that Charity Vance, with the other defendants, objected to the granting of the prayer of the said petition. It is true, that in the rec-

ord as before us there is a paper-writing purporting to be the petition of Charity Vance, in which she prays that she may be treated as one of the plaintiffs in the cause, but no record of its having been tendered to the court appears in the cause. In the absence of such record it would be improper in this court, I apprehend, to regard such petition as a part of the record, and as having been presented to and acted on by the court. *Sims* v. *Bank of Charleston*, 8 W. Va., 274. If the plaintiff had the right to maintain this suit to remove a cloud from the title to the land in the case stated in his bills, then it seems to me, that, so far as he or his *cestui que trust* is concerned, it was not essential to the doing of full justice in the cause to the plaintiff's pretensions or claims, that Charity Vance should be a plaintiff in the cause against her consent and objection thereto. It seems to be adjudicated, that a trustee may apply to a court of equity to remove impediments to a fair execution of his trust, and to remove a cloud hanging over the title to the property conveyed to him in trust to secure the payment of a debt or debts. *Rossett* v. *Fisher et al.*, 11 Gratt., 492; *Macher* v. *Sehon, sheriff, et al.*, 14 W. Va., 783; *Ambler, trustee*, v. *Leach et al.*, 15 W.Va., 677; *Johnson et al.* v. *Johnson*, 30 Ill., 215.

I do not mean to be understood as affirming, that a trustee may in every case apply to a court of equity to remove every cloud of title upon the property conveyed to him in trust to secure the payment of debts, but I presume it is safe to say, that generally the trustee may do so in cases where his grantor might do so. In the case of *Vance* v. *Evans et al.*, 11 W. Va., 342, it was held by this Court: "1. A decree between co-defendants can only be based upon the pleadings and proofs between the complainant and defendant. 2. Where a case is made out between defendants by evidence arising by the pleadings and proofs between the complainant and defendants, a court of equity should render a decree between the co-defendants." It is true, that in this case

1880
Special Term.

Burlew, trustee
v.
Quarrier *et al.*

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

the plaintiff has wholly ignored and failed to take any notice of, or make any averment in relation to, the decision of this court rendered in the case of the *Goshorns* v. *Friend's adm'r et al.*, upon the validity of the tax-deed from Quarrier, clerk, to Cox. But according to the record the defendants, not a part of them, but the defendants, plead the adjudication of this court in the case of the *Goshorns* v. *Friend's adm'r et al.*, as to the validity of the-tax deed from Quarrier, clerk, to Cox, who conveyed to Thomas R. Friend in his lifetime the land in controversy in bar to plaintiff's bill. The plaintiff, when this plea was tendered, moved the court to reject the same; but the court overruled the motion and admitted the plea to be filed. But it appears by the final decree rendered in the cause on the 15th day of June, 1874, that the plaintiff tendered a demurrer in writing to the special plea theretofore filed by the defendants, which was ordered to be filed, and by consent of parties the demurrer was set down for argument, and the same being argued and considered was sustained by the court. Thus it appears by the record, according to my reading of it, that on demurrer the court held the plea to be bad as a bar to the plaintiff's bill and amended bill. If therefore the court did err in admitting the plea to be filed, the plaintiff is not prejudiced thereby, as the court on demurrer held the plea bad. It is the constant practice of courts of equity to allow amendments of bills by the introduction of new plaintiffs, when the purposes of justice require it. *Coffman* v. *Langston et al.*, 21 Gratt. 263, 269, and cases there cited.

In *Vaiden et al.* v. *Stubblefield's ex'r*, 28 Gratt. 153, it was held, that "in this country the rule is well settled, that in cases of misjoinder of parties as plaintiffs in equity, the objection must be made by demurrer, if the defect is apparent on the face of the bill, or by plea or answer, if the defect does not so appear; and unless so made, the objection will not avail at the hearing, if a decree can be rendered without prejudice to the rights of

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

the parties." See also *Id.* 157 and 158, and cases there cited.

In *Belton* v. *Apperson et al.*, 26 Gratt. 207, it was held, that "the rule in equity in regard to amendments is, that they may be made, when the bill is defective in its prayer for relief or in the omission or mistake of some fact or circumstance connected with the substance of the case but not forming the substance itself. The plaintiff will not be permitted to abandon the entire case made by his bill and make a new and different case by way of amendment. But this rule has been much trenched upon, especially in the States and in Virginia." See also same case, 215, 216, 217 and 218. *Piercy, ex'r, &c.,* v. *Beckett et al.*, 15 W. Va. 444.

In *Armentrout's ex'rs* v. *Gibbons,* 25 Gratt. 371, Judge Bouldin, in delivering the opinion of the court, says, at page 375 : "No principle of equity is more familiar or better settled than this : that all persons materially interested in the subject of controversy ought to be made parties in equity, and if they are not, the defect may be taken advantage of either by demurrer or by the court at the hearing. *Clark* v. *Long,* 4 Rand. 451. It is not necessary (although certainly more regular) that the want of parties should be made either by plea, answer or demurrer. On the contrary, if it appear on the face of the record that proper parties are wanting, the decree will be reversed, unless the objection was expressly relinquished in the court below," &c. It is also the practice in equity to allow amendments of bills by transposing parties from plaintiff to defendant, and *vice versa,* if it is necessary to do complete justice between the parties in the cause. But this will not be allowed at the mere' caprice of parties. See on this subject, vol. 1, 3d Am. ed. of Daniel's Chy. Pr. 404, 405, 408, 409.. "Great latitude always has been allowed to a plaintiff in making amendments ; and the court has even gone to the extent of permitting a bill to be converted into an information." Vol. 1 Daniel's Chy. Pr. 3d Am. ed. 408. See

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

also, upon the subject of amendments, Story's Eq. Pl. §§ 884, 885, 886, 887, 888, 889, 890.

Charity Vance in her answer makes no complaint of, nor in any way impeaches, the decree of this Court rendered in the case of *Goshorns* v. *Friend's adm'r et al.*, to which she was a party, as ascertained and determined by this Court, in which case this Court clearly held and decided, that the said tax-deed from Quarrier, clerk, to Cox was valid, although she must have known, when she filed her answer, that that decision was relied on by some of the parties to the cause as final as to her, whatever might be its effect as to the plaintiff and his *cestui que trust.* If this Court decided anything in the case to which I have referred, it decided, that said tax-deed was valid. "A fact, which has been directly tried and decided by a court of competent jurisdiction, cannot be contested again between the same parties in the same or any other court. It is *res adjudicata.* It is not necessary that precisely the same parties were plaintiffs and defendants in the two suits; provided the same subject in controversy between two or more of the parties plaintiffs and defendants to the two suits respectively, has been in the former suit directly in issue and decided." *The Western M. & M. Co. et al.* v. *The Virginia Cannel Coal Co. et al.*, 10 W. Va. 250. But see further on this subject Freeman on Judgments §§174, 175 and authorities there cited in notes.

In *Hollingsworth & Co.* v. *Brooks*, 7 W. Va. 559, Judge Paull in delivering the opinion of the Court at page 566 said : "We observe in the *third* place, that said decision" (speaking of a decision of this Court) "is in no way subject to review in any further decision to be made in the cause, but is permanent and irreversible, settling the rights of parties upon all questions properly coming within its purview or effect, and all legitate consequences flowing therefrom."

In the case of *Newman* v. *Molohan*, 10 W. Va. 488, the syllabus is : "A joint judgment in a suit in which an attachment had issued against all the defendants as non-

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

residents, having been rendered against several of the defendants, one of them, who had pleaded, took an appeal, and the Court of Appeals affirmed the judgment. Another of the defendants, against whom this joint judgment was rendered, a non-resident who had not pleaded after due notice, then moved the circuit court who had rendered the judgment to reverse and annul the same, because the order of publication against him had not been made in the manner required by law, and because there had been a personal judgment against him, though he had never been served with process, and for other errors apparent on the face of the record, held : That the circuit court properly overruled his motion, as after the affirmance of the judgment by the Court of Appeals no defendant could make a motion in the circuit court to reverse or modify the judgment, though the record of the case in the Court of Appeals fails to show that the defendant making the motion was notified of the appeal, it being conclusively presumed he was so notified, and all the questions raised by his motion had been considered and decided by the Court of Appeals when it affirmed the joint judgment." See also the opinion of the Court in that case and the authorities there cited. See also *Hall & Smith* v. *Bank of Virginia*, and *Renick* v. *Ludington et al*, 15 W. Va. 323, and cases there cited in the opinion of the Court, and *Henry et al.* v. *Davis*, 13 W. Va. 230. By appearance to the action in any case, for any other purpose than to take advantage of the defective execution or the non-execution of process, a defendant places himself precisely in the situation in which he would be, if process were executed upon him, and he thereby waives all objection to the defective execution or the non-execution of process upon him. *Bank of the Valley* v. *Bank of Berkeley*, 3 W. Va. 386, and *Mahany* v. *Kephart and the B. & O. R. R. Co.* 15 W. Va. 609.

From what appears in this case, or is alleged or pretended in the pleadings, it seems to me from the authorities cited above, and especially from the cases decided

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

by this Court, that there can be no question that Charity Vance is bound by the decision of this Court in the case of *Goshorns* v. *Friend's adm'r et al.*, before referred to, and that said tax-deed of Quarrier must be taken and held by us as valid as to said Charity Vance, the validity of the tax-deed as to her being *res adjudicata*, whatever may be properly held as to the effect of that decision as to the plaintiff or his *cestui que trust*. But of this more will be said hereafter and herein.

Under the views I have before expressed, the allegations and facts appearing and authorities cited, I am unable to see, that the court would have erred in refusing to permit Charity Vance to be made a plaintiff in the cause, if it had refused so to do on the petition of plaintiff, or even if it appeared by the record that Charity Vance had moved or petitioned the court to be made plaintiff instead of defendant at the time plaintiff filed his said petition. But it does not distinctly appear that the court ever did so decide, unless it is to be so inferred from the fact that the court rendered its final decree in the cause without allowing the prayer of plaintiffs' said petition in that regard. Whether such an inference may be properly drawn, I deem it unnecessary to decide, as under the views I have expressed it is immaterial. For some of the reasons above stated and authorities cited upon the subject of transposing parties from defendants to plaintiffs I feel unable to decide that the court erred in refusing to transpose P. W. Morgan, administrator, from defendant to a plaintiff in the cause. I think such transposition was not necessary to the doing of complete justice in the cause, so far, to say the least of it, as the plaintiff or said Morgan, as administrator of the *cestui que trust*, is concerned. While a court of equity will generally allow the amendments of the bill, by the transposition of a party from the position of defendant to plaintiff, when it appears to be necessary to the doing of complete justice between the parties in the cause, still I apprehend that such court will not direct such amend-

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

ment by transposition simply for the purpose of enabling the party transposed to remove the cause into another and foreign jurisdiction.   But P. W. Morgan, administrator, &c., does not appear to be a non-resident of this State, and his transposition from the position of defendant to that of plaintiff would not have entitled him to remove the cause to the Circuit Court of the United States, and he was and is the chief beneficiary, as the representative of his intestate, to the deed of trust in the bills mentioned.   Nor am I prepared to say, that, if the name of Charity Vance had been transposed to the position of plaintiff in the cause, she would have been entitled under the laws of the United States to have had the cause removed to the Circuit Court of the United States.   See § 639 of ch. 7, p. 113 of the Revised Statutes of the United States.   See also the case of *Beery* v. *Irick*, 22 Gratt. 484, and the same case in 12 American Reports 539.   See also note in the American Reports to said case at page 545, and 18 Wallace 553.

In the said case of *Beery et al.* v. *Irick et al.*, 22 Gratt. 484, it was held:   "1. A suit in a State court cannot be removed to a United States Court unless the suit might have been brought originally in the last named Court. 2. There are several plaintiffs in a suit in a State court, some of whom live out of the State, and others live in it, and the interests of all are so connected that the rights and interests of one cannot be adjudicated separately ; the defendants live in the State.   The non-resident plaintiffs are not entitled to have the cause removed to a United States Court under the act of Congress of March 2, 1867, for the removal of causes."   After the decree appealed from in this cause was made, Congress passed another act touching the removal of causes from State courts to United States Circuit Courts.   See Acts of Congress, 1874-5, chapter 137, pages 470, 471, 472 and 473.   But I simply mention this fact without comment, as this act is immaterial in this case as it stands before us.

*As to the appellants' third assignment of error :*   As we

1880
Special Term.

Burlew, trustee
v.
Quarrier *et al.*

have seen, it appears that this cause was removed from the circuit court of Kanawha county, on the application of Charity Vance, to the District Court of the United States, and that the last named court afterwards, on the 8th day of May, 1874, remanded the cause to the said circuit court of Kanawha county for further proceedings to be had therein. Notwithstanding this fact the defendant, Charity Vance, moved the court to again remove the cause from said circuit court to the said District Court of the United States, under the act of Congress for the removal of causes from the State to the United States Courts; and, the decree says, she filed in support thereof her petition and affidavit and bond with good and sufficient security, which motion was resisted by the other *defendants* and was overruled, for the following reason : "It appearing to the court, that this cause was at a former term ordered to be removed to said United States District Court on the motion of the said Charity Vance, and has been remanded to this court by the said District Court for want of jurisdiction." It must be remarked here, that no petition or affidavit of defendant, Charity Vance, for the removal of the cause as aforesaid appears in the record. But there does appear in the record a petition of Charity Vance, "plaintiff," and an affidavit of Charity Vance, "plaintiff," for the removal of a cause pending in the circuit court of Kanawha county, wherein she alleges she is a plaintiff and Joel S. Quarrier and others are defendants, and asks that said cause be removed to the Circuit Court of the United States in and for the fourth judicial circuit, to be held in the district where said suit is pending, for certain reasons in said petition and affidavit mentioned. These we cannot infer are the petition and affidavit referred to in the said decree of the circuit court of Kanawha county aforesaid for manifest reasons. No other petition or affidavit of Charity Vance appears in the record; and this petition and affidavit does not apply to the case. The application for removal having been made

by defendant Charity Vance to the District Court of the United States for the district of West Virginia, to which court the cause had before been removed on her motion, and that court having remanded the cause to the circuit court of Kanawha county for further proceedings, upon the ground manifestly that the cause had been removed improperly on motion of the defendant, Charity Vance, I see no error in the circuit court of the county of Kanawha in refusing to again remove the cause to said District Court on the motion of said Charity Vance.

I am not aware of any United States statute that expressly authorizes the removal of a cause from a State court to a District Court of the United States. The acts of Congress do provide, that under certain circumstances a cause may be removed from a state court to the Circuit Court of the United States for the district wheie such suit is pending. Whether the acts of Congress includes District Courts of the United States, it is unnecessary now to decide under the view I take of this case, but at present it strikes me that it does not. It seems to me, for the reasons aforesaid, that said third assignment of error is not well taken by appellants.

*As to the appellants' fourth assignment of error:* For reasons above stated, I do not think the court erred in hearing the cause for the reasons stated in this assignment of error. This assignment of error is not supported by the record, but is in fact contradicted by it. Whether the court erred in dismissing the plaintiff's bill on the hearing of the cause, will hereafter be considered.

*As to the appellants' fifth assignment of error:* It appears by the order of the court made in the cause on the 27th day of July, 1872, that the court did expressly pass upon and overrule the exceptions of plaintiff, filed to the answer of Joel S. Quarrier and Fannie C. Quarrier, his wife. This assignment of error is therefore not well taken. Whether the court erred in overruling the said

## 150 SUPREME COURT OF APPEALS.

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

exceptions will be considered in considering the appellants' sixth assignment of error.

*As to the appellants' sixth assignment of error:* On consideration it seems to me that the court did not err in overruling the plaintiffs' exceptions filed to the answer of defendants, Joel S. Quarrier and Fannie C., his wife, for the reason that, although the adjudication by this court in the case of *Goshorns* v. *Friend's adm'r et al.*, may not be final as to plaintiff and his *cestui que trust*, who were not parties to that case, still it is proper to be set up in this case, as showing that the heirs of Friend are entitled to the equity of redemption in the undivided moiety of the land conveyed by Charity Vance to the plaintiff in trust, if the debt in said deed of trust is a valid one and unsatisfied in whole or part, and if plaintiff in fact acquired the legal title to a moiety of said land by virtue of the trust-deed of Charity Vance in the bills mentioned. Perhaps said exceptions should have been overruled for other reasons; but this I do not decide, because I deem it unnecessary so to do. No exception or objection was taken or filed in the court below, so far as the record shows, to the said answer of Quarrier and wife, or to the filing thereof, because it was not verified by affidavit; and it is too late to make that objection in this court. No exception appears to have been taken to the form of said answer in the court below. No exception appears to have been made or taken to said answer, except those which are filed and made a part of the record, which have been hereinbefore stated. No exceptions were filed to said answer for insufficiency in any respect, save as stated in said written exceptions.

I should have said as to plaintiff's fifth exception to said answer, that it cannot now be determined whether the exhibits mentioned in said answer were filed therewith at the time or not, the court below could see that fact; and the exhibits, as agreed upon by the counsel in the cause, do now appear in the record, and must have been before the court below at the hearing. Whether it

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

is necessary in all cases to file exhibits with the bill or answer at the time of filing such bill or answer, I do not now decide, because unnecessary in this case. I will say however, that I doubt very much whether that is essential in every case, or whether the failure to file an exhibit with an answer is good ground for an exception to such answer in all cases. These are matters within the sound discretion of the court, to be exercised according to the rules of equity under the circumstances appearing to the court. The better and safest practice is to file exhibits with the bill or answer as the case may be. As we have seen, no record of the court appears showing the filing of exceptions to the answer of Thompson and wife, or that any exceptions to the answer were ever brought to the attention of the court, or passed on by the court. It is too late to take advantage of the failure to make oath to said answer in this Court, that objection not having been made in the court below. It seems however, that the plaintiff filed what is termed a special replication to this answer, which was objected to, and the court sustained the objection. This replication I have hereinbefore set out, and deem it unnecessary to restate it. It seems to me however, that the matters stated in said replication were insufficient in this case as a replication, and that the court did not err in sustaining the objection made to the filing thereof.

*As to the appellants' seventh and eighth assignments of error:* These assignments of error are each very indefinite, especially the eighth. But the seventh assignment brings up the whole case on its merits, as it was before the circuit court. As we have seen, a trustee in a deed of trust may file a bill to remove a cloud upon the title conveyed to him in trust for the purposes of the trust. To this however I presume there are some exceptions, which it is unnecessary here to define or determine. But I apprehend that a trustee may under circumstances file a bill in a case like this, to declare a tax-deed null or inoperative as to the trust-debt and deed, where the

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

tax-deed was made under the provisions of the thirty-seventh chapter of the Code of Virginia of 1849. If the grantor in the deed of trust to the trustee could have filed such a bill before or at the time of the execution of the trust-deed, it seems to me that the trustee in such deed may well do so after the execution thereof, and after the right of the trustee under the provisions of the deed of trust to sell the realty conveyed has become complete. And it may be that a trustee may be entitled to file such a bill in some cases where his grantor could not properly do so.

. In the case of *Yancey* v. *Hopkins*, 1 Munf. 419, Judge Tucker, at page 427, says : " It was objected by the appellant's counsel, that the complainant had a plain remedy at law by an ejectment to recover the premises. But I am of opinion, that he had a right to come into a court of equity for the purpose of setting aside a deed, which might have obstructed his recovery in an ejectment. And it was more beneficial to the defendants, that he should do so, as they might by their answer purge themselves of any imputation of fraud or collusion in making the sale. Besides, the object of the bill was to compel a reconveyance of the land from the defendant, Faris, which a court of law could not enforce."

This was a bill filed by the owner of the land to set aside a tax-deed ; and I understand Judge Tucker to lay down as a distinct reason why a court of equity had jurisdiction in the case, that plaintiff had a right to come into a court of equity, for the purpose of setting aside a deed, which might have obstructed his recovery in ejectment. It is true that he states other reasons, the absence of which I do not understand would destroy the first.

Judge Cooley in his work on Taxation 1st addition, page 543 says : "When however, the illegality or fatal defect does not appear on the face of the record, but must be shown by evidence *aliunde,* so that the record would make out a *prima facie* right in one who should

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

become purchaser, and the evidence to rebut this case may probably be lost, or be unavailable from death of witnessess or other cause, or when the deed given on a sale of the lands for the tax would by statute be presumptive evidence of a good title in the purchaser, so that the purchaser might rely upon that for a recovery of the land until the illegalities were shown, the courts of equity regard the case as coming within their ordinary jurisdiction, and have extended relief, on the ground that a cloud on the title existed or was imminent. The cases on this point are numerous, and in considerable variety, as would be anticipated in view of the different tax-systems under which they have been made." See also authorities cited by same author on said page 543. Burroughs on Taxation page 367, also Blackwell on Taxation, 4th edition, pages 553, 577, and cases there cited ; *Scott* v. *Onderdonk et al.,* 14 N. Y. 9 ; *Hatch* v. *City of Buffalo,* 38 N. Y. 276 ; *Fonda* v. *Sage et al.,* 48 N. Y. 173 ; *Camden* v. *Davis,* decided by this Court but never reported. The case of *Ferguson* v. *Donnally,* 7 W. Va. 114, was a case of partition under our statute in relation to partition.

To authorize the trustee to maintain a bill of the character of that filed in this cause, it seems to me that the trustee ought to allege in his bill substantially, that the debt in the deed of trust mentioned is unpaid in whole or in part, and that the trustee should in this case also allege and show by proper averments and statements of title, that the title or the right thereto is in him for the purposes of the trust, and if these facts are denied, he should do something more in regard to title than to content himself with his allegations in respect thereto. In this case the plaintiff in his amended bill, after stating the links in his title back to Thomas L. Hutton, says : "All of which deeds of conveyance are of record in Kanawha county, attested copies of which will be furnished on the trial of this cause, which your orator prays may be read and considered as a part of this

1880
Special Term.

Burlew, trustee
v.
Quarrier *et al.*

amended bill." None of the deeds of conveyance in said amended bill mentioned and set up as showing title in the plaintiff appear in the cause, as it is before us. The only express allegation in the original and amended bills of plaintiff in relation to said deed of trust being paid or not is the allegation of the plaintiff, that the same was never paid to him. This, it seems to me, in and of itself is generally insufficient in such cases, as while it may not have bee i paid to him, it might have been paid to the *cestui que trust*, who is generally the proper person to receive the debt. But it seems to me, that taking the original and amended bills together it does sufficiently appear, that the plaintiff claims therein that said debt has not been paid. It is argued by counsel for appellants, that the allegation of the plaintiff in his amended bill as to his title derived from Thomas L. Hutton, in whose name the whole tract of land was sold for taxes, as we have seen, were special, distinct and specific, and that those allegations are uncontroverted by answer and should have been taken as true at the hearing. The 36th section of chapter 125 of the Code of this State of 1868 provides, that "every material allegation of the bill not controverted by an answer, and every material allegation of new matter in the answer constituting a claim for affirmative relief, not controverted by a reply, shall for the purposes of the suit, be taken as true, and no proof thereof shall be required."

There is no special denial in the answer of the plaintiff's allegations in his amended bill as to the title as therein alleged. But the defendants, Joel S. Quarrier and his wife, in their answer, as may be seen by reference thereto, use this language : "They deny all the material allegations contained in the plaintiff's bill, and call for strict proof of the same." While this denial is general, and not sufficient to constitute good pleading in chancery proceedings, if excepted to properly in the court below, still in the absence of such exceptions in the court below it seems to me, that the part of the an-

1880
Special Term.

Burlew. Trustee
v.
Quarrier et al.

swer which I have quoted should be considered by the appellate court as controverting the allegations of the plaintiff as to the title, as well as other material allegations of the bill. Webster in his dictionary among other things says, that controvert means, "to contest; to debate; to deny." It appears to me that the effect of this general denial, as stated in the answer, in the absence of proper exceptions to the answer, upon general replication should be considered as controverting the material allegations of the bills. The effect given to an answer in chancery with us is now materially different from what it was prior to the Code of 1868. See § 59 of ch. 125. It seems that the only effect given to an answer under said section is to put in issue the material allegations of the bill, which are denied by the answer. The answer, it seems, is not evidence as formerly.

The abstract of the title made by Commissioner Freer referred to in the plaintiff's bill and amended bill is filed in the cause as an exhibit and as evidence; and no exceptions were filed to it in the court below. We have seen what that abstract contains. It substantially sustains the chain of title from Thomas L. Hutton to plaintiff as set out in the amended bill, and I have but little doubt, that in the absence of exceptions to said abstract as evidence, the court in deciding the cause regarded the abstract as being correct and undisputed, which perhaps it had the right to do under the circumstances. For it is clear to my mind that the court did not dismiss the plaintiff's bills on account of the absence of the muniments of title stated in the amended bill. It is manifest, as I think, that the court dismissed the plaintiff's bills, because it was of the opinion that the tax-deed from Quarrier, clerk, to Cox was a valid deed, and that the chief controversy made before the court was upon the validity of said tax-deed, based upon the decision of this court in the case of *Goshorns* v. *Friend's adm'r et al.*, and the supposed

effect of that decision upon the plaintiff and his *cestui que trust* as well as Charity Vance.

Having determined that the decision of this Court in the case of *Goshorns* v. *Friend's adm'r et al.*, as to the validity of the said tax-deed from Quarrier, clerk, to said Cox, was final and binding on said Charity Vance, and this Court in said last named cause did decide that said tax-deed was a valid deed as to said Charity Vance, it must next be determined how far that decision is binding upon the plaintiff and his *cestui que trust* as to said deed of trust and the debt therein secured, and what disposition and determination this Court should now make of this cause. Neither the plaintiff nor his *cestui que trust* was a party to the said cause of *Goshorns* v. *Friend's adm'r et al.*, and the deed of trust of Charity Vance to the plaintiff, in the bills mentioned, was executed in 1868, and Charity Vance did not become a party to the last named cause until some time after the making and due recordation of said trust-deed, and the last named cause was not decided in this court until in February, 1872.

Mr. Story, in his Eq. Pl. § 427, says: "A decree obtained without making those persons parties to the suit, in which it is had, whose rights are affected thereby, is fraudulent and void as to those parties. And even a purchaser under it, having notice of the defect, is not protected by such decree; for otherwise the decree of a court of equity might be used as an engine for the purpose of effecting the grossest fraud. And therefore when a decree has been made against a trustee, the *cestui que trust* not being before the court, and the trust not discovered; or where a decree has been made against a person, who has made some conveyance or incumbrance not discovered; or when a decree has been made in favor of or against an heir, where the ancestor has in fact disposed by will of the subject-matter of the suit; the concealment of the trust, or subsequent conveyance, or in-

1880
Special Term.

Burlew, trustee
v.
Quarrier *et al.*

cumbrance, or will in these several cases ought to be treated as a fraud."

From the authorities I have hereinbefore cited upon the subject of *res judicata* and bearing thereon, my con-clusion is, that neither the plaintiff nor his *cestui que trust* is concluded by the decision of this court in the said case of *Goshorns* v. *Friend's adm'r et al.*, so far as said trust-debt and the lien thereof created by said deed of trust upon the said undivided moiety of said tract of land are concerned; and that this court is not concluded by the decision in that case from enquiring into and de-termining the validity of said tax-deed in this case, so far as relates to the plaintiff and his *cestui que trust,* and said deed of trust and the debt secured thereby upon the moiety of the tract of land therein mentioned.

As we have seen, the sale of the said tract of land was made in the year 1855, and the deed recites that the sale was made for taxes due thereon for the year 1850. The sale was made under the provisions of chapter 37 of the Code of Virginia of 1849, which in many respects is similar to the same chapter of the Code of 1860. The second section of chapter 37 of the Code of 1849 pro-vides, that " In the month of April, May or June of the year one thousand eight hundred and fifty, and in one of those months every five years afterwards, the first auditor shall cause to be delivered to the sheriff or collector of the taxes for each county and corporation a list of real estate therein, which since the 10th day of March, 1832, shall have been, or hereafter shall be, re-turned delinquent for taxes, and on which the taxes re-main unpaid, with a statement of the amount due for the taxes on each tract or lot so returned, and for inter-est on such taxes."

The third section provides, that " Within twenty days after receiving such list such sheriff or collector shall make out three copies thereof, and set up one of them at the front door of the court-house, and the other two at two of the most public places in his county or corpo-

1880
Special Term.

Burlew, trustee
v
Quarrier et al.

ration. To each copy he shall subjoin a notice that the real estate therein mentioned, or so much thereof as shall be sufficient to satisfy the taxes on the same with interest and commissions of five per cent to the sheriff or collector, will be sold at public auction between the hours of ten in the morning and four in the evening, on the first day of the next succeeding September or October court of his county or corporation, at the door of the court-house thereof, unless the said taxes, interest and commission shall be previously paid. Such list and notice shall, if ordered by the court of the county or corporation in which such real estate lies, be advertised for four successive weeks in some convenient newspaper; the expense of which shall be apportioned among the delinquents, according to the amount of taxes due by them respectively."

Section four provides, that "If the said taxes, interest and commissions, and a due proportion of said expense be not previously paid, the said sheriff or collector shall proceed to make sale accordingly; and the sale may be adjourned from day to day, and proceed between the hours aforesaid, until it shall be completed. If however the sale be not completed on the last day of the court, it shall be adjourned to the first day of the next court. It may then proceed, and be adjourned in like manner as at the previous term. Whenever there is an adjournment to the next court, notice thereof shall be given by advertisement at the door of the court-house."

The seventh section provides, that "the sheriff or collector, on receiving from any purchaser the amount of purchase-money, shall grant to him a receipt for the same," and then prescribes the form of the receipt which it is not necessary here to give.

The ninth section provides, that "the sheriff or collector shall make out a list of the sales, with the following caption thereto: *List of real estate within the county* (or corporation) *of* —— *sold in the month* (or months) *of* ——, *eighteen hundred and* ——, *for the non-payment of*

*taxes thereon for the year* ——. Underneath shall be the several columns mentioned in the seventh section with a like caption to each column. And there shall be an additional column showing the date of each sale, unless the sales were all made on one day, in which case the day may be mentioned in the caption."

1880
Special Term.

Burlew, trustee
v.
Quarrier *et al.*

The tenth section provides that "subjoined to the said list, shall be the following oath : *I, A. B., sheriff* (or collector or deputy) *for C. D., sheriff* (or collector) *of the county of* ——, *do swear that the above list contains a true account of all the real estate within my county, which has been sold by me during the present year for the non-payment of taxes thereon for the year* ——; *and that I am not directly or indirectly interested in the purchase of any of the said real estate. So help me God.* Which oath shall be taken and subscribed before a justice."

Section eleven provides, that " the said list, with a certificate of the said oath attached thereto, shall be returned to the court of the county or corporation, whose officer may have made the sales, at the first or second term next after the completion of the said sales. If the court see no cause to doubt the correctness of the list, it shall order a copy thereof to be certified to the first auditor."

The twelfth section provides, that " the owner of any real estate so sold, his heirs or assigns, or any person having a right to charge such real estate for a debt, may redeem the same by paying to the purchaser, his heirs or assigns, within two years from the date thereof, the amount for which the same was so sold, and such additional taxes thereon as may have been paid by the purchaser, his heirs or assigns, with interest on the said purchase-money and taxes, at the rate of ten per centum per annum, from the times that the same may have been so paid."

The fifteenth section provides, that " when also an entire tract of land is so sold, and not redeemed within the said two years, the purchaser, his heirs or assigns, at

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

his or their expense, shall have a report made by the surveyor of the county to the court thereof, specifying the metes and bounds of the land sold and the names of the owners of the adjoining tracts, and giving such further description of the land sold as will identify the same ; and the county court, unless it see some objection to such report, shall order the same to be recorded."

Section sixteen provides, that "after the expiration of the said two years, the purchaser of any real estate so sold and not redeemed, shall obtain from the clerk or deputy clerk of the court of the county or corporation, whose officer may have sold such real estate, a deed conveying the same, in which shall be set forth all the circumstances appearing in the clerk's office in relation to the sale," &c.

The twenty-second section provides, that "when the purchaser of any real estate so sold, his heirs or assigns, shall have obtained a deed therefor, according to the six preceding sections, and within six months from the date of such deed, shall have caused the same to be recorded in the court of the county or corporation in which such real estate shall lie, such estate shall stand vested in the grantee in such deed as it was vested in the party assessed with the taxes, on account whereof the sale was made, at the commencement of the year for which the said taxes were assessed, notwithstanding any irregularity in the proceedings under which the said grantee claims title, unless such irregularity appear on the face of the proceedings. And if it be alleged that the taxes, for the non-payment of which the sale was made, were not in arrear, the party making such allegation must establish the truth thereof by proving that the taxes were paid."

In the case at bar the receipt of the sheriff to the purchaser, William R. Cox, seems to be in due form. It shows on its face, that the land was sold for the non-payment of taxes upon the land for the year 1850, and that the land was charged with the taxes in the name of

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

Thomas L. Hutton ; that the quantity of 'the land charged was three thousand three hundred and seventy-five acres ; it gives its local description ; it shows, that the amount of taxes due was $1.04; that the quantity of land sold was three thousand three hundred and seventy-five acres ; that the name of the purchaser was William R. Cox; and that the amount of purchase-money was $1.04, and that the amount of sheriff's commission was 25 cents, and the receipt 25 cents, making a total of $1.54 paid by the purchaser, Cox, to the sheriff. It must be observed that the receipt of the sheriff is not required by the law to be filed in the clerk's office or elsewhere. The receipt is the mere private paper of the purchaser. The caption to the list of the sales returned by the sheriff to the county court appearing in this case is as follows, to-wit : "Memorandum of real estate within the county of Kanawha, sold in the months of September and October, 1855, for the non-payment of taxes since the year 1850." This list shows the name of the person charged with the tax to be Thomas L. Hutton; number of acres charged, the local description, "Blue creek" (the same as in the said receipt of the sheriff), the amount of taxes due $1.04 ; the quantity of land sold three thousand three hundred and seventy-five acres ; the time of sale the 15th of October; the amount of purchase-money $1.04.

The oath of the sheriff appended to said list is as follows, to-wit : " Virginia, Kanawha county, to-wit : I, John Slack, sheriff of Kanawha county, do swear, that the above and foregoing list contains a true account of all the real estate within my county, which has been sold by me during the present year (other than was bid in by me for the commonwealth according to the act of Assembly in such cases made and provided, a list whereof is hereunto annexed) for the non-payment of taxes thereon since the year 1850, as per list certified to me by the Auditor of Public Accounts for sale for said taxes, etc., and that I offered the whole of the lands contained in

1880
Special Term.

Burlew, trustee
v.
Quarrier et at.

the said list at the September and October terms of the county court of said county, according to law, and that I am not directly or indirectly interested in the purchase of any of said real estate.   So help me God.

"JOHN SLACK,
"*Sheriff Kanawha County.*"

"Sworn to and subscribed before me, a justice of the peace for said county, this — day of December, 1850.

"JACOB GOSHORN, *J. P.*"

The list of lands and lots returned as delinquent in the county of Kanawha for different years, including the year 1850, and certified to the sheriff or collector for sale in 1855, shows that three thousand three hundred and seventy-five acres were returned delinquent in the name of Thomas L. Hutton, located on Blue creek, for the year 1850, and that the amount of tax was 84 cents, and total tax and damages thereon $1.04.   The deed from Quarrier, clerk, to said Cox for the said three thousand three hundred and seventy-five acres of land recites that the land was sold for the non-payment of taxes thereon, for the year 1850.   I have carefully examined the cases of *Flanagan* v. *Grimmet et al.,* 10 Gratt. 421 ; *Hobbs* v. *Shumate,* 11 Gratt. 516 ; *Buchanan* v. *Reynolds,* 4 W. Va. 692, and reviewed the case of *Forqueran* v. *Donally,* 7 W. Va. 114, and also the case of *Dequasie* v. *Harris infra* (decided at the present term of this court), and my conclusion is, that although said tax-deed from Quarrier, clerk, to William R. Cox must be held and considered valid and binding as to Charity Vance per force and effect of the decision of this court in said case of *Goshorns* v. *Friend's adm'r et al.,* yet, that said tax-deed is void and inoperative as to the lien created upon one undivided moiety of the tract of land in the bills mentioned by the deed of trust executed to the plaintiff as trustee in the bill mentioned, to secure the payment of the debt in said deed of trust mentioned, with its legal interest, and as to said deed of trust so far, and only so far, as it may be necessary to sell the undivided moiety

of the tract of land therein mentioned to raise the money <span>1880<br>Special Term.</span> to pay the said debt and interest. And that therefore Burlew, trustee the court erred in dismissing the plaintiff's bill. <span>v.<br>Quarrier et al.</span>

It is true, that, as the case stands, it seems that the said tract of land was returned delinquent for the taxes charged thereon for the year 1850, and that the Auditor certified the same to the sheriff, as being so returned delinquent, for sale in the year 1855, and that the sheriff ought to have sold it at the September or October term of the county court of Kanawha, in the year 1855, for the taxes charged thereon for the year 1850; but did he do so? The return of the sheriff of the sale, made under his solemn oath, which is required by the law to be made for manifest purposes, states clearly that he sold the land "for the non-payment of taxes thereon since the year 1850." And this is stated in his return in two distinct places, the first in the caption to his return, and the other in his solemn oath thereto appended, and nowhere on the face of the return or in his said oath thereto does the contrary appear. Had the clerk the authority to correct or disregard the return of sale of the sheriff, as he did in this case? The law in force at the time, to-wit: the 16th section of said chapter 37 of the Code of 1849, says, that the deed shall set forth all the circumstances appearing in the clerk's office in relation to the sale. Now, in this case, can it be truly said that was done? One of the most material circumstances appearing in the clerk's office in relation to the sale, and the only evidence to which the clerk could look under the circumstances as to whether the land had been sold, and for what it had been sold, was the sworn return of the sheriff, made in pursuance of law, and that return states, that the land was sold by him for the non-payment of taxes due since the year 1850, and the deed says it was sold for the non-payment of taxes thereon for the year 1850. This return of the sheriff of the sale is evidently required to be made in part for the benefit and information of the owner of the land, that he may see

1880
Special Term.

Burlew, trustee
v.
Quarrier et al.

what part of his land has been sold, to whom, and when sold, and for what it was sold, so that he may see and determine for himself therefrom whether the sale as reported is valid or a nullity, or whether he has paid the taxes for the year for which the land was sold, or that he may redeem in the time required by the law if he so elects.    It seems to me that the variance between the recital in said tax-deed and the said return of the sheriff is as to a material fact, and not as to a mere irregularity. The sheriff's return of the sale was made in the regular course of his duty prescribed by law, and was the only evidence in the clerk's office of the county court of the sale, and for what he sold it ; and that return on its face, in my humble opinion, is materially defective in failing to show the year in which the taxes were not paid and for the non-payment of which he sold the land.    It seems clear to my mind that if the said tax-deed had recited on its face, that the said tract of land was sold for the *non-payment of taxes since the year* 1850, it would for that cause have been void on its face.

I have made these remarks in justification and in support of the conclusion announced by me immediately preceding the same.    Before arriving at said conclusion I examined with great care the opinion and decision of this court, before referred to, in the case of *Goshorns* v. *Friend's adm'r et al.,* deciding that the said tax-deed was valid at least as to the said Charity Vance, to see if I could concur with the reasoning and decision of the court in that case and apply it to said tax-deed as to the plaintiff and his *cestui que trust* in this case, but after patient examination and reflection I am unable in my conscience to do so.    It is with great delicacy and respect that I have arrived at and announced my conclusion and judgment as above.

Other objections to the validity of said tax-deed have been alleged and argued before us in this case in connection with the one I have already considered ; but under the views I have expressed, the consideration and decis-

1880
Special Term.

Burlew, trustee
v.
Quarrier *et al.*

ion of said other objections have become unnecessary and immaterial in the case; and I therefore do not decide, or express any opinion, in relation thereto.

It is proper that I should say, that I do not think that in this case we can regard the objections to said tax-deed, which I have considered, as cured by chapter 31 of the Code of this State, or any other act of the Legislature, to which my attention has been called, or which I have seen. Nor do I regard the conclusion to which I have arrived, or the views I have expressed in support of such conclusion, as being in the least in conflict with the cases in 10th and 11th Grattan, 4th and 7th West Virginia, and the case of *Dequasie* v. *Harris*, to which I have before referred, but as being in accord therewith.

It seems to me, for the reasons hereinbefore stated, that the said decree of the circuit court of the county of Kanawha, rendered in this cause on the 15th day of June, 1874, is erroneous, in so far as it decides that the plaintiff is not entitled to relief, and in so far as it dismisses the plaintiff's bill and amended bill, and decrees that the defendants, Joel S. Quarrier, Fannie C. Quarrier, John H. Thompson, Paulina S. Thompson, John Dryden, Eliza A. Cox, Frank Cox and Ida Cox recover against the plaintiff their costs about their defence expended, including $30.00, as allowed by law; and the said decree, to the extent aforesaid and no further, is reversed and annulled, and the defendants, Joel S. Quarrier and John H. Thompson, must pay the appellants their costs in this court about the prosecution of their appeal and *supersedeas* in this court expended, and all the other parts of said decree, not herein reversed and annulled, are affirmed. And this cause is remanded to the said circuit court of the county of Kanawha, with instructions to the said court to further proceed in the said cause according to the principles settled in this opinion, and further according to the principles and rules governing courts of equity.

1880
Special Term.

Burlew, trustee
v.
Quarrier *et al.*

JUDGES GREEN AND JOHNSON CONCURRED.

JUDGE MOORE concurs in all of said opinion except so much of the same as decides said tax-deed invalid and the reasons given therefor.

DECREE REVERSED.    CAUSE REMANDED.